MICHIGAN TRUST CO. *v.* LAND OWNERS ASSN.

1. TAXATION—MORTGAGES—NONPAYMENT OF SPECIFIC TAX—EFFECT.
   Section of statute providing that mortgages subject to mortgage tax should not ''be released, enforced, discharged of record or received in evidence * * * until the tax * * * shall have been paid'' does not render mortgage upon which the tax is not paid void but is designed to secure the State in the payment of the tax (1 Comp. Laws 1929, § 3647).

2. MORTGAGES—EVIDENCE—DETERMINATION OF AMOUNT DUE—PAYMENT OF SPECIFIC TAXES—CONDITION OF RELIEF.
   Where mortgage tax had never been paid on trust mortgage due to failure of mortgagor to supply mortgagee with the information necessary to enable latter to obtain a determination of the amount payable, an issue raised by pleadings in foreclosure proceedings, reception of mortgage in evidence over objection, determination of amount of mortgage and tax payable and rendition of decree for plaintiff conditioned upon its payment of tax within 30 days from entry of decree else suffer bill to be dismissed *held*, proper, no prejudice to State or bondholders under the mortgage having resulted (1 Comp. Laws 1929, §§ 3644, 3647).

3. JUDICIAL SALE—PROPERTY SUBJECT TO INCUMBRANCE—ESTOPPEL OF PURCHASER.
   One who, at a judicial sale, purchases property subject to an existing incumbrance is thereafter estopped from denying the validity of such incumbrance.

4. SAME—ESTOPPEL OF PURCHASER AS TO INCUMBRANCES.
   Property sold for $62,078.89 under order of Federal court pursuant to winding up receivership proceedings of two corporations, which order recited that property was subject to $200,000

(323)

mortgage held by plaintiff herein, notice of such mortgage was contained in the master's notice of sale, bidders were informed of it, and purchaser was a trust company which had been receiver of the corporations, *held*, in equity, subject to plaintiff's mortgage, and such purchaser is estopped from attacking the validity of the mortgage or bonds issued thereunder and secured thereby.

5. COURTS—MORTGAGE FORECLOSURE—FEDERAL JURISDICTION—CORPORATE RECEIVERSHIPS.

Fact that proceedings in chancery to foreclose mortgage were instituted in court of this State *held*, not to render Federal court without jurisdiction thereafter to appoint receiver for corporation owning equity of redemption and for corporation owning majority of stock of such equity owner and to satisfy receiver's claims for advances alleged to have been made to order sale subject to mortgage, hence Federal court orders in receivership proceedings are not subject to attack in the foreclosure proceedings where such orders did not interfere with the foreclosure proceedings and issues therein differed from those in foreclosure proceedings.

6. SAME—JURISDICTION—CHANCERY FORECLOSURE OF MORTGAGE IN STATE COURT—FEDERAL RECEIVERSHIP OF CORPORATE MORTGAGOR.

The acts of a Federal court in receivership proceedings of corporate mortgagor should not be disturbed until it is made to appear that they have interfered with or encroached upon the primary jurisdiction of State trial court in mortgage foreclosure proceedings in chancery previously instituted.

7. MORTGAGES—AFTER-ACQUIRED PROPERTY CLAUSE—OWNERSHIP OF STOCK IN ANOTHER CORPORATION.

Claim that because all of the stock of first corporation was owned by a second corporation at expiration of the corporate existence of the first corporation, all of the assets of such first corporation were subject to mortgage previously given by second corporation under an after-acquired property clause *held*, not tenable where burden of proof of claimant was not sustained in that he failed to show all of stock was owned as claimed.

8. SAME—CORPORATIONS—REFORMATION OF INSTRUMENTS—EVIDENCE.

Reformation of mortgage to include land belonging to corporate mortgagor not specifically described therein *held*, not error where its president testified that at time mortgage was executed it was intended to include all of the corporate property but that by mistake and inadvertence this was not done and no rights of innocent purchasers have intervened.

9. SAME—TRUST MORTGAGES—CERTIFICATION OF ADDITIONAL BONDS.

Trial court's refusal to require plaintiff, trustee under a trust mortgage, to certify bonds in the amount of $100,000 in addition to $200,000 certified shortly after mortgage was executed *held*, proper where original purpose of bond issue was to effect a financial reorganization of the corporate owner of a majority of the corporate mortgagor's stock and consolidate the two companies but the authority to do so, given by the securities commission, had been revoked and the corporate existence of the holding company had terminated several years prior to hearing in the instant mortgage foreclosure suit.

10. SAME—TRUST MORTGAGES—PRIORITY OF BONA FIDE HOLDERS OF BONDS.

In chancery proceedings to foreclose trust mortgage securing a number of bonds, payment of such bonds as were acquired by holders who purchased them in exchange for a consideration other than that authorized by resolution of corporate mortgagor authorizing execution of the mortgage and subsequent to default under the mortgage and institution of foreclosure suit *held*, properly subordinated to payment of bonds shown to be in the hands of *bona fide* holders for a valuable consideration.

11. SAME—TRUST MORTGAGES—PRESIDENT OF CORPORATE MORTGAGOR —CANCELLATION OF BONDS.

In chancery proceedings to foreclose a trust mortgage, cancellation of bonds issued thereunder which president of corporate mortgagor claimed to own individually *held*, proper where record fails to show satisfactorily in what manner the bonds were transferred by him as president to himself as an individual or that any consideration was paid to the mortgagor for the bonds he now holds, his acts in dealing with himself being open to careful scrutiny.

12. SAME—FORECLOSURE—TRUSTEE FEES AND EXPENSES.

Amount allowed trustee under trust mortgage as fees under mortgage now being foreclosed and reimbursement for sums expended by it for legal services *held*, reasonable.

Appeal from Berrien; Evans (Fremont), J. Submitted October 14, 1938. (Docket No. 67, Calendar No. 40,241.) Decided April 4, 1939. Rehearing denied June 14, 1939.

Bill by Michigan Trust Company, trustee, against Land Owners Association, a Michigan corporation, to foreclose a mortgage. Grand Rapids Trust Company, Grand Beach Company, Charles J. DeLand, receiver of General Discount Corporation, of Detroit, a Delaware corporation, Kramer & Sons, an Indiana corporation, Great American Indemnity Company of New York, Henry Nau, Josephine C. Minzer, Fred M. Abbott, Berrien Gas & Electric Company, a Michigan corporation, and Charles S. Abbott, intervened. From decree rendered, Grand Rapids Trust Company appeals and defendant Land Owners Association, Grand Beach Company, Charles S. Abbott, and Fred M. Abbott, cross-appeal. Affirmed.

*Travis, Merrick & Johnson,* for plaintiff.

*Norris, McPherson, Harrington & Waer,* for Grand Rapids Trust Company.

*Charles S. Abbott,* for Land Owners Association, Grand Beach Company, and Abbotts.

*W. M. Cunningham,* for intervener Minzer.

*Sempliner, Dewey, Stanton & Honigman* (A. W. Sempliner and E. R. Stanton, of counsel), for intervener DeLand.

*Harry L. Crumpacker,* for intervener Kramer & Sons.

Chandler, J. Sometime prior to November 1, 1923, the date of the mortgage involved in this suit for foreclosure, one Perkins was the owner of the majority of the outstanding capital stock in the Grand Beach Company, which in turn owned 54 per cent. of the capital stock of the Land Owners Association. Both corporations were organized for

the purpose of conducting a summer resort business on the shores of Lake Michigan in Berrien county. The property owned by the Grand Beach Company was subject to a mortgage to the Chicago Title & Trust Company and one Frank Gardner as trustees, which mortgage had been executed in financing the construction of a resort hotel on the property. As additional security to this mortgage, the Land Owners Association stock owned by the Grand Beach Company had been pledged to the Chicago Title & Trust Company. It also appears that capital stock of the Grand Beach Company in the amount of $100,000 had been pledged with Rowley Brothers of Chicago, to whom Grand Beach Company had become indebted in the course of construction of the hotel.

Early in 1923, Mr. Perkins found himself in difficulties and in need of financial assistance. Through his son-in-law, he became acquainted with Charles S. Abbott, who at that time was president of the General Discount Company, a financing corporation having its principal place of business in the city of Detroit. Mr. Abbott became interested in the project, and after presentation of the picture to the directors of the General Discount Company, a plan was evolved for financial reorganization. According to Mr. Abbott, it was proposed that all of the capital stock of the Grand Beach Company be acquired and held as a treasury asset of Land Owners Association and to this end an option was executed with Rowley Brothers providing for the purchase of such stock held by them. It was also contemplated that the outstanding minority stock of Land Owners Association should be acquired by Perkins, the purchase thereof to be financed by the General Discount Company.

Also, as a part of the reorganization plan, Land Owners Association was to execute a trust mortgage securing a bond issue in the amount of $900,000 with which the bonds previously issued by the Grand Beach Company were to be retired. Authorization for this action was granted by a resolution of the directors of Land Owners Association passed on October 11, 1923, at which time Charles S. Abbott was elected president of the company to fill the vacancy resulting from the resignation of Mr. Perkins.

Pursuant to the plan as outlined, the mortgage in question was executed as of November 1, 1923, naming therein, plaintiff, Michigan Trust Company, as trustee.

Upon the due date of the first interest payment, default occurred, and at no time were any funds deposited with the trustee to meet interest or principal payments as they accrued. In the fall of 1925, three instalments of interest being then due, bonds in the amount of $20,000 held by Henry Nau, Jr., were presented to plaintiff with a request that foreclosure proceedings be instituted. Thereupon, the bill of complaint herein for foreclosure of the mortgage was filed. A large amount of litigation immediately ensued which has continued until the present time, and due to various proceedings in the Federal court, to be hereinafter explained, the bill was not brought on for hearing until August, 1936, some 10 years after the filing thereof. By leave of the court, various bondholders, the Grand Beach Company, the Grand Rapids Trust Company, and Charles S. Abbott and Fred M. Abbott, were permitted or required to intervene as parties defendant.

The first question presented relates to the failure to pay the mortgage tax as required by the provisions of 1 Comp. Laws 1929, § 3640 *et seq.*, as

amended (Stat. Ann. § 7.421 *et seq.*).  When the mortgage was offered in evidence an objection to the reception thereof was made on the ground that the tax in question had not been paid with the exception of the sum of 50 cents paid at the time the mortgage was presented for recording.

With reference to this question, it appears that early in January, 1924, subsequent to the execution of the mortgage, Charles S. Abbott appeared at the offices of plaintiff with bonds in the amount of $200,000 and requested that plaintiff certify bonds in this amount.  The propriety of certification of the bonds without the mortgage tax first being paid was discussed, and Mr. Abbott gave his assurance that none of the bonds would be issued until such time as the tax had in fact been paid, and it was upon this condition that plaintiff consented to certification as requested.  Thereafter, plaintiff discovered that the tax had not been paid and considerable correspondence ensued with Abbott in which the latter was requested to make prompt payment of the tax.  Various reasons were assigned by Abbott for nonpayment, including the plea that the matter was being held in abeyance pending disposition of proceedings then before the securities commission relative to the issuance of the bonds by the mortgagor.  Mr. Abbott claimed that he attempted to secure a determination by the board of State tax commissioners as to the amount of tax to be paid but that said board ruled that he was not the proper person to petition therefor, and that the petition must be made in the name of the mortgagee.  He further claimed that upon receiving this information, he discussed the question with plaintiff and that he was advised that plaintiff's attorneys would have to be consulted in the matter.  Plaintiff states that the petition was never filed by it for the reason

that it was never able to ascertain the amount of bonds that had been issued, and that without this information it was impossible to take the necessary steps to obtain a determination of the amount of tax to be paid. During the course of the trial and at other times, attempts were made by plaintiff and the various bondholders to pay the tax which would be due upon the amount of bonds held by the respective bondholders, but in each instance payment was refused by the county treasurer because of the absence of a determination by the board of State tax commissioners of the amount payable. During the trial, the bondholders tendered the amount of tax which would be payable on the bonds held by them and at all times have stood ready and willing to pay said tax.

The trial court denied the motion to dismiss the bill of complaint on this ground, provided, however, that the tax, with interest, be paid upon the aggregate principal amount of bonds found by it to have been validly issued within 30 days from the date of entry of the decree, and, in default thereof, the bill of complaint to be dismissed forthwith. Within 30 days from entry of the decree, a certificate of the county treasurer was filed stating that he had received $1,416.99, the amount of tax together with interest found by the court to be due.

The Grand Rapids Trust Company argues that the court erred in proceeding with the hearing without first requiring the payment of the tax and that he had no authority to proceed as he did and determine the amount of tax payable and enter a decree subject to the payment thereof in view of the provisions of 1 Comp. Laws 1929, § 3644 (Stat. Ann. § 7.425), which provides for a determination of the amount payable to be made by the board of State

tax commissioners, and 1 Comp. Laws 1929, § 3647
(Stat. Ann. § 7.428), which provides:

"No mortgage or land contract, which is subject
to the tax imposed by this act shall be released, en-
forced, discharged of record or received in evidence
in any action or proceeding at law or in equity, nor
shall any assignment of or agreement extending any
such mortgage or land contract be recorded until the
tax imposed thereon by this act shall have been paid
as in this act provided.  No judgment or final order
in any action or proceeding at law or in equity shall
be made for the foreclosure or enforcement of any
such mortgage or land contract, which is subject to
the tax imposed by this act, or any debt or obliga-
tion secured thereby, until the tax imposed by this
act shall have been paid as provided in this act."

The section of the statute above-quoted does not
render the instrument in question void. *Riess* v.
*Old Kent Bank,* 253 Mich. 557 (76 A. L. R. 571).
The purpose of the statute is to secure the State in
the payment of the tax. *Macdonald* v. *Betts,* 246
Mich. 585.  In the instant case, the tax had never
been paid due to the failure of the mortgagor to
supply the mortgagee with the information neces-
sary to enable it to obtain a determination of the
amount payable.  The amount still remained un-
determined at the opening of the hearing and for the
same reason tender of the tax was refused by the
county treasurer when made by the various parties
holding bonds.  The amount of tax to be paid was
dependent upon the sum secured by the mortgage
and this question was one of the issues raised by the
pleadings.  In view of the somewhat unusual cir-
cumstances involved, the procedure adopted by the
trial court is approved.  The payment of the tax to
the State was made in accordance with the decree

and the purpose of the statute has been thereby served. The interests of the State were protected as well as those of the bondholders relying upon the mortgage as security. Prejudice has resulted to no one.

The pleadings filed by the Grand Rapids Trust Company submit for decision the question as to the validity of the mortgage and the bonds issued thereunder, it being claimed that the bonds were issued without consideration and that there were no good-faith holders thereof. An understanding of this feature of the case necessitates a recital of the history of the litigation which took place in the Federal court concerning the two corporations.

As has been stated, Land Owners Association stock had been pledged as additional security for the bonds issued under the Grand Beach Company mortgage. Because of this fact, it was felt that the assets of the Land Owners Association should be kept intact so that the additional security as aforesaid might not become impaired. Accordingly, as an incident to the foreclosure of that mortgage, the Federal court on April 9, 1927, appointed the Grand Rapids Trust Company as receiver for both corporations. See *Grand Beach Co.* v. *Gardner* (C. C. A.), 34 Fed. (2d) 836. And it was in this manner that the Grand Rapids Trust Company became of importance in the litigation. Because of the subsequent proceedings which were had involving it as receiver, we believe that it is estopped from attacking the validity of the mortgage and bonds in this suit to foreclose the mortgage.

On September 28, 1927, the receiver filed a petition in the Federal court, alleging that certain expenses had been incurred and were to be incurred which were necessary for the preservation of the property in its care. The petition prayed that the

receiver be authorized to borrow money for the various purposes enumerated and to issue receiver's certificates therefor, the same to be a prior lien on all of the property of the Grand Beach Company and the Land Owners Association. The authority was granted on January 7, 1928, said certificates, however, to be a lien inferior to the Land Owners Association mortgage. The receivership proved disastrous financially to both corporations as a large indebtedness was incurred, representing sums supposedly advanced by the receiver for the preservation of the properties and for operating expenses. On May 1, 1931, the Federal court ordered the receiver to file a final account, that portion thereof relating to the allocation of the receiver's advancements between Land Owners Association and Grand Beach Company to be referred to a master for determination, and that in default of payment by the respective corporations of the sums so found to be due, the property to be sold, and in the case of Land Owners Association, subject to plaintiff's mortgage. This same provision was incorporated in the order allowing the receiver's final account. It was likewise contained in the master's notice of sale; bidders were so informed by the master at the time the sale was held, whereat the Grand Rapids Trust Company purchased the property and became the owner of the equity of redemption. And the sale was confirmed subject to this provision.

In addition to all of the foregoing, the Grand Rapids Trust Company, in 1928, petitioned the Federal court for an order authorizing it to institute a suit, the object of which was to set aside the mortgage here involved, then under foreclosure, and the bonds issued thereunder, said petition reciting facts relative to the execution of the mortgage and that bonds in the amount of $200,000 had been delivered

to Charles S. Abbott. An answer was filed but the cause was never heard, and after lying dormant for several years was dismissed by stipulation dated September 7, 1935.

The Grand Rapids Trust Company appears to recognize the general proposition, discussed in 75 A. L. R. 1370, that one who, at a judicial sale, purchases the property subject to an existing incumbrance, is thereafter estopped from denying the validity of such incumbrance. See, also, *Ledyard* v. *Phillips,* 32 Mich. 13; *Messmore* v. *Huggard,* 46 Mich. 558; *Belcher* v. *Curtis,* 119 Mich. 1 (75 Am. St. Rep. 376); *Pratt* v. *Mapes,* 270 Mich. 501, which, although varying in facts from the instant case, are illustrative of the principle involved.

The Grand Rapids Trust Company, however, contends that this principle is applicable only in those cases in which the purchaser at the judicial sale has knowledge of facts not possessed by other prospective purchasers, based upon which an attack might be made upon the outstanding incumbrance, and that in the instant case the rule is inapplicable because any purchaser contemplating bidding at the sale would have been apprised by investigation of the various court records that the sum secured by the mortgage was in dispute.

We are persuaded, however, that in view of the facts hereinbefore related, which indicate that at each stage of the proceedings in connection with the master's sale, and in fact at all times, all parties understood that the property was being sold subject to plaintiff's mortgage and that there were bonds outstanding thereunder in the amount of $200,000. A review of all the facts is impressive that it would be wholly inequitable to permit the Grand Rapids Trust Company to prosecute its attack at this time, and, if successful, become the owner of this valu-

able property for the grossly inadequate sum of $62,078.89, the amount bid therefor by it at the master's sale.

Land Owners Association, Charles S. Abbott, and Fred M. Abbott attack the validity of all the proceedings involving the property which took place in the Federal court on the ground that that court had no jurisdiction because of the primary and exclusive jurisdiction acquired by the trial court when these foreclosure proceedings were instituted. It is their contention that because of lack of jurisdiction, all of the acts of the Federal court were invalid and that the issues at various times decided by that court adversely to them should be relitigated in this suit, including an accounting by the Grand Rapids Trust Company covering the period during which it was in possession of the property as receiver.

The trial court held that by the institution of these proceedings it acquired primary and exclusive jurisdiction as to issues relating to the foreclosure, matters arising between the various bondholders, and issues raised between the bondholders and the plaintiff as trustee under the mortgage. The court also ruled that insofar as those issues presented to and adjudicated by the Federal court did not conflict with those relating to the foreclosure of the mortgage, they were not subject to collateral attack or relitigation in this suit.

It is not our purpose to refer to and analyze the multitude of decided cases bearing upon this question in one manner or another. We are satisfied that the Federal court was not without jurisdiction to appoint a receiver and proceed as it did under the facts of the case because of the prior institution of this suit for foreclosure of the mortgage. The Grand Rapids Trust Company was appointed as receiver for the purpose of conserving the assets of Land

Owners Association because 54 per cent. of the stock
of that corporation was pledged as additional se-
curity to the Grand Beach Company mortgage, then
under foreclosure in the Federal court. The ap-
pointment in no way interfered with the instant
foreclosure proceedings, the issues presented by
such appointment differed from those here involved,
and finally, the receivership, including the sale, was
at all times conducted in recognition of and in sub-
ordination to this mortgage. The Federal court had
jurisdiction to appoint the receiver and its orders
and decrees incidental thereto are not subject to
attack at this time. See *Brown* v. *Crawford,* 254
Fed. 146; *Empire Trust Co.* v. *Brooks* (C. C. A.),
232 Fed. 641. The acts of the Federal court should
not be disturbed until it has been made to appear
that they have interfered with or encroached upon
the primary jurisdiction acquired by the trial court.

At the request of Charles S. Abbott, plaintiff
moved to amend the bill of complaint, presenting
the issue as to whether Land Owners Association
became the owner of all the property of Grand
Beach Company, and the same in turn subject to
plaintiff's mortgage by reason of an after-acquired
property clause contained therein. This claim was
based upon the theory that subsequent to the ex-
piration of the corporate existence of Grand Beach
Company in 1930, the property of said corporation
passed to its stockholders and that inasmuch as
Land Owners Association owned all the stock of
Grand Beach Company at that time, the former be-
came vested with the assets of the latter and hence
subject to the mortgage. The difficulty with the
theory appears chiefly to be that the record does
not demonstrate that Land Owners Association
owned the Grand Beach Company stock. Without
accounting for all of the stock, we content ourselves

with the observation that at the time of the hearing 199 shares thereof were produced by the General Discount Corporation and introduced into evidence. We find that the record does not sustain the claim that all of this stock was owned by Land Owners Association and that consequently there has been a failure to sustain the burden of proof on this issue.

It was also claimed that the mortgage should be reformed to include certain lands owned by the mortgagor which were not specifically described therein. The trial court so found, on the basis of the testimony of Charles S. Abbott who executed the mortgage as president of Land Owners Association and who testified that it was intended at the time the mortgage was executed that it was to include all of the property of the corporation but that by mistake and inadvertence this was not done. The trial court was not in error in permitting the reformation to be made, at least in view of the fact that no rights of innocent purchasers have intervened. The Grand Rapids Trust Company complains of this action, but it cannot be considered as an innocent purchaser in purchasing from itself as receiver as hereinbefore related. See *Stram* v. *Jackson,* 248 Mich. 171.

At the time the bonds were issued, the Michigan securities commission on April 21, 1924, entered an order authorizing the issuance of $300,000 of the entire $900,000, providing $600,000 thereof be deposited with the commission in escrow to be used in acquiring the bonds outstanding under the Grand Beach mortgage. Subsequently, the $600,000 not being deposited with said commission as required by its order, the order was revoked. In spite of this revocation, Charles S. Abbott, in behalf of himself and Land Owners Association, requested the trial court to decree that the plaintiff be required to certify bonds in the amount of $100,000 in addition

to the $200,000 which was certified shortly after the mortgage was executed. The trial court properly refused so to hold, not only because the authorization therefor by the securities commission was cancelled, but because the only apparent purpose that would be accomplished thereby would be to increase the mortgage by this amount. It was contemplated that the bonds be issued originally for the purpose of effecting a financial reorganization of the Grand Beach Company and a consolidation of that company with Land Owners Association. The corporate existence of Grand Beach Company has expired, and the bonds which were issued under the plan have been in default for a number of years. It is obvious that it is no longer feasible to attempt a reorganization as proposed, and, in the absence of such a possibility, additional bonds certainly should not be certified.

The pleadings put in issue the amount and ownership of the various bonds outstanding, to which question we now turn our attention. The trial court considered this question on the authority of *Speers Sand & Clay Works, Inc.*, v. *American Trust Co.*, 20 Fed. (2d) 333.

The General Discount Company, by its receiver, claims to be the owner of bonds to the amount of $65,000, which were acquired in attempting to finance the plan for the acquisition of stock of the two corporations. The only attack made upon this block of bonds is made by the Grand Rapids Trust Company, which, as we have held, is estopped from questioning the validity of the mortgage or the ownership of bonds issued thereunder.

Kramer & Sons, Berrien Gas & Electric Company and Great American Indemnity Company all acquired the bonds held by them for a valuable consideration, and they are valid outstanding obliga-

tions. However, the resolution passed by the directors of Land Owners Association on October 11, 1923, recited that the bonds to be issued were ''for the purpose of acquiring additional property, improving the same and paying the cost of development.'' The bondholders just mentioned acquired their bonds in exchange for a consideration other than authorized, and subsequent to default and the institution of this foreclosure suit. They cannot, therefore, be said to be *bona fide* holders thereof, and payment of their obligations was properly subordinated by the trial court to payment of those bonds shown to be in the hands of *bona fide* holders for a valuable consideration.

For the foregoing reason, the bonds held by Josephine Minzer, who received them subsequent to default and the institution of this suit, in payment of back salary due from Land Owners Association and sums loaned by her to Fred M. Abbott, should be subordinated in payment to those bonds in the hands of *bona fide* holders for a valuable consideration.

Charles S. Abbott introduced into evidence certain bonds which he claimed to own individually. The trial court in determining the amount validly outstanding under the mortgage ordered these bonds cancelled. The testimony produced by Mr. Abbott and his various claims made in his brief as to his ownership of the bonds in his possession fail to reveal the exact manner in which they were acquired by him. However, the following resolution, omitting real estate descriptions, was passed at the directors' meeting held October 11, 1923:

''Resolved, that this corporation purchase from said Charles S. Abbott 174 shares of the common stock of the Grand Beach Company, and in consideration therefor convey by good and sufficient

warranty deed to said Charles S. Abbott or his assigns, all of the following described real estate
* * *

"And the further consideration of $250,000 par value 6 per cent. bonds of this corporation which it is contemplated this corporation will presently issue; the said above-described real estate and $250,000 in bonds to be in full consideration for the purchase of said 174 shares of common stock of Grand Beach Company."

At the same meeting it was,

"Resolved, that this corporation purchase from said Charles S. Abbott 379 shares of common stock of this corporation and pay therefor 174 shares of the Grand Beach Company this day purchased from said Charles S. Abbott, delivery of which has been made to Frank C. Sibley, in escrow for said Charles S. Abbott, and to be released to him upon furnishing proper proof of delivery to this corporation on or before one year from date hereof of an assignment or certificate representing 329 shares of stock of this corporation, 50 shares of which have this day been delivered to the Land Owners Association, receipt of which is hereby acknowledged; said 174 shares of common stock of the Grand Beach Company being hereby sold to said Charles S. Abbott upon the above terms, and the same are hereby declared to be free and clear of any corporate mortgage or other lien now existing or hereafter created."

It was also at this same meeting that the resolution authorizing the execution of the trust mortgage for the "purpose of acquiring additional property, improving the same and paying the cost of development," was passed. The resolutions were all adopted as a part of the proposed reorganization scheme. It is also clear that after execution of the mortgage Charles S. Abbott obtained certification of bonds in the amount of $200,000 which were de-

livered to him as president of the corporation, and that various bonds out of this total finally fell into the hands of the parties now claiming them.

It is not shown by any satisfactory evidence in what manner the bonds claimed by Abbott were transferred by him as president of Land Owners Association to himself as an individual owner. If it was in pursuance of the resolutions above-quoted, the record is equally unsatisfactory as to whether the consideration contemplated for the delivery of the bonds to him as an individual was in fact paid to the corporation. In short, the acts of Mr. Abbott in dealing with himself as president on one hand, and as an individual on the other, should be open to careful scrutiny, and we are not able to satisfy ourselves from any evidence produced that any consideration was paid by Abbott to Land Owners Association for the bonds he now holds. It follows that the trial court was not in error in decreeing that these bonds be cancelled.

The Grand Rapids Trust Company complains of the amount allowed by the trial court as fees to the trustee under the mortgage and reimbursement for sums expended by it for legal services. We find the amounts allowed to be reasonable and that no sound objection has been made to such allowance.

Not every issue raised by the briefs, especially the multitude of questions argued in the 311 pages of brief submitted by Charles S. Abbott, have been discussed. They have all been thoroughly examined, however, and it is the conclusion of this court that the decree should be affirmed.

Decree affirmed, with costs.

Wiest, Sharpe, North, and McAllister, JJ., concurred. Butzel, CJ., and Bushnell and Potter, JJ., did not sit.