2005 SD 26

**Rita M. TIBBITTS and Alwin R. Tibbitts, Plaintiffs and Appellees,**

v.

**ANTHEM HOLDINGS CORPORATION a Colorado corporation, Defendant and Appellant.**

**No. 23148.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 2005.

Decided Feb. 23, 2005.

---

Frank A. Bettmann of Finch, Bettmann, Maks & Hogue, Rapid City, South Dakota, Attorneys for appellee, R.M. Tibbitts.

Kenneth R. Dewell of Johnson and Eiesland, Rapid City, South Dakota, Attorneys for appellee, A.R. Tibbitts.

James W. Olson of Wilson, Olson & Nash, Rapid City, South Dakota, Attorneys for defendant and appellant.

MEIERHENRY, Justice.

[¶ 1.]  This is an appeal from a judgment to quiet title in abandoned highway land to Rita and Alwin Tibbitts (Tibbitts). We affirm in result.

## FACTS

[¶ 2.]  In January of 1980, the State of South Dakota Department of Transportation (DOT) formally abandoned a portion of an old highway in Pennington County and declared that any rights reverted to the former owner, his heirs or assigns. The DOT had platted the portion of the road at issue a few weeks prior to the abandonment.  The plat split the highway land into two equal lots divided by the road's center line.  The lots were platted as Lot W and Lot W–1. Lot W is made up of the northern portion of the abandoned road and is adjacent to Lot 1 (Lot A), which is owned by Tibbitts.  Lot W–1 is made up of the southern portion of the abandoned road and is adjacent to Tract 2, which is owned by Anthem Holdings Corporation (Anthem).  The parties dispute ownership of the two lots after the State's abandonment.

[¶ 3.]  Despite the highway being abandoned in 1980, the issue of the ownership

did not arise until June of 2000, when Tibbitts conducted a survey of their property. The survey showed that they had placed some of their improvements on Lot W and some pavement on Lot W–1. The Defendant, Anthem Holdings, gave Tibbitts a notice of wrongful possession of Lots W and W–1. Tibbitts denied Anthem's claim and on September 11, 2001, commenced this lawsuit to quiet title. Tibbitts claimed ownership of Lot W. Anthem counterclaimed to quiet title of both Lots W and W–1 in its favor. The trial court found that the highway property reverted to the owners of the adjacent lots. Accordingly, the trial court ruled that one-half belonged to Tibbitts (Lot W), and one-half belonged to Anthem (Lot W–1). Anthem appeals, claiming all of the property should have reverted to it.

## ISSUE

**Whether the trial court erred in determining that the abandoned highway right of way reverted to the adjoining property owners.**

### STANDARD OF REVIEW

[¶ 4.] The trial court decided this case on stipulated facts, exhibits and briefs. Our resolution of the case turns upon the interpretation of contracts and the application of law. Interpretation of contracts is a question of law, reviewed de novo. *Prunty Const., Inc. v. City of Canistota*, 2004 SD 78, ¶ 10, 682 N.W.2d 749, 753. We review a trial court's conclusions of law de novo. *Parmely v. Hildebrand*, 2001 SD 83, ¶ 6, 630 N.W.2d 509, 512.

## DECISION

[¶ 5.] In order to decide who owns Lots W and W–1, it is necessary to trace the history of their ownership. Prior to 1929 what are now Tract 2, Lot A, Lot W and Lot W–1 were all part of one large piece of land owned by Charles Snyder. In 1929, Charles Snyder deeded a strip of this land to Pennington County for a highway right of way. Additional land was granted by another deed executed in 1933. Although "deeds" were used to convey the land, the deeds stated they were for a "right of way." Thus, our initial inquiry is whether the deeds passed title of the land to the County in fee or only transferred an easement. The trial court concluded that the land was conveyed in fee. The trial court erred in this conclusion.

[¶ 6.] Since the County purchased its interest in the land, as opposed to condemning the land, we look to the language of the deeds from the landowner to the County to determine if the land was transferred in fee.[1] The original deeds to the County specifically state that the conveyances were for rights of way.[2] The 1929 deed conveyed "[a] strip of land, 80 feet wide for highway right of way situated in the Wisconsin Placer...." The 1933 deed conveyed "[r]ight of way for the Hill City–Rapid City Highway across the Wisconsin Placer...." Further supporting an easement conveyance is a 1930 map. The map depicts the land the County intended to acquire for highway purposes. This map includes the land at issue here and is

---

1. Had the County taken the land by condemnation, the South Dakota Constitution, Article VI, § 13 would have required the fee to remain with the landowner. The Constitutional provision provides in relevant part: "The fee of land taken for railroad tracks or other highways shall remain in such owners, subject to the use for which it was taken." *Id.*

2. The pertinent definition of "right-of-way" states: "The right to build and operate a railway line or a highway on land belonging to another, or the land so used." BLACK'S LAW DICTIONARY 1326 (7th ed 1999).

conspicuously titled a "RIGHT OF WAY MAP."

[¶ 7.] We have stated that "[w]here the term 'right of way' is used in a deed it usually indicates that only an easement or right of passage is being conveyed or reserved." *Northwest Realty Co. v. Jacobs*, 273 N.W.2d 141, 144 (S.D.1978); *see also Pluimer v. City of Belle Fourche*, 1996 SD 65, ¶¶ 14–17, 549 N.W.2d 202, 205–06 (finding that the State held only an easement for highway purposes); *Cuka v. State*, 80 S.D. 232, 237, 122 N.W.2d 83, 85 (1963) (stating that where a warranty deed was used to convey property to the State for a highway, "[a]n easement was all the state could acquire regardless of the form of the instrument of conveyance"). In this case, the deeds conveying an interest in the land to the County conveyed only rights of way, and title to the land remained in the grantor, Charles Snyder.[3]

[¶ 8.] Having determined that title to the land remained with the grantor, we must now track the chain of title to the present day. At the time of the conveyance of the rights of way, Charles Snyder was the sole owner of the land over which the rights of way passed and all land adjacent to the rights of way. In 1937 Snyder platted and sold Lot A, a portion of the land adjacent to the rights of way. The deed for Lot A is silent as to whether any portion of the adjacent right of way land at issue here is included in the conveyance.[4] South Dakota law provides that "[a] transfer of land bounded by a highway passes the title of the person whose estate is transferred to the soil of the highway in front, to the center thereof, unless a different intent appears from the grant." SDCL 43–25–29. Applying this statute we have said: "The conveyance of property fronting on a street or highway is presumed to carry title to the center of the street or highway, 'unless the fee in the street is *expressly reserved* in the conveyance.'" *Pluimer*, 1996 SD 65, ¶ 13, 549 N.W.2d at 205 (quoting *Holida v. Chicago & N.W. Transp. Co.*, 398 N.W.2d 742, 744 (S.D.1986)) (additional quotations and citations omitted).

[¶ 9.] Anthem contends that the fee in the street was expressly reserved by virtue of the description of Lot A contained in the deed of conveyance. This description provides a boundary line that is located at the edge of the adjacent right of way property, rather than at the center of the right of way property. Anthem

---

3. Although the rights of way were originally granted to the County and not the State, SDCL 31–4–2 was subsequently enacted. It states:

   All rights-of-way of the state trunk highway system, together with all appurtenance thereto, the right or interest in or to which was or is in any county shall be and the same are hereby transferred to and vested in the state of South Dakota for highway purposes.

4. The deed states:

   Lot "A" of Wisconsin Placer No. 910 in the NW1/4 of Sec. 22, Twp. 1 S. Range 5 East, Being a portion of the Wisconsin Placer enclosed by Highway 85 Alternate and the Right & Left branches of the Keystone-Rapid City road described as follows: Beginning at Cor. 1 from which the Center of Sec. 22 T. 1 S.R. 5 E. bears S 44 25' E 1508 ft. distant; Thence N.E. around a 10 curve to the Right 188 Ft. to Cor. 2 which is the intersection of the south side of Highway No. 85 Alternate with the Rapid City–Keystone Cut-off; Thence S. 65 05' W. 242 ft. along south side Highway 85 Alternate to Cor. 3; Thence S. 65 30' E. 128 Ft. along line 10–11 of Wisconsin to Cor. No. 1 and place of beginning enclosing .28 acre. more or less, according to plat filed in office of Register of Deeds of Pennington County, South Dakota.
   (We note that the border at the south side of Highway 85 referenced in the deed is not the border at issue in this case; rather, it is the border around the 10 curve that is at issue.)

purports that since the boundary was defined as the edge of the right of way property, the right of way property was reserved. We do not agree. We examined an analogous situation in *Sweatman v. Bathrick*, 17 S.D. 138, 95 N.W. 422 (1903). In *Sweatman*, the boundary line for a plat was defined as "running northerly along Sherman street 17 feet more or less." *Id.* at 423. We concluded that even though the description indicated the lot line ran "along Sherman street," it actually included the property to the center line of the street. *Id.* at 427. We reviewed and considered other states' conflicting caselaw on whether a reversion in an adjacent street is conveyed along with the property when the boundary is described as "the edge of the street." Ultimately, this Court sided with the jurisdictions that found the distinction between a boundary description "bounded by a highway," as opposed to "bounded by the edge of a highway" too technical. *Id.* A better rule, we concluded, is to require the fee in the adjoining highway to be "expressly reserved" in the conveyance. *Id.*

[¶ 10.] This same principle applies to the facts of this case. The description of the conveyed land provided a boundary line for the property at the edge of the adjacent highway, not at the middle of the highway. No mention of the adjacent highway right of way is made in the conveyance. Nevertheless, as we found in *Sweatman*, failure to include the highway right of way in a boundary description does *not* constitute an "express reservation" of the right of way property. Since the original conveyance of Lot A did not expressly reserve the fee in the street, the conveyance transferred title to the center of the highway. Consequently, the conveyance of Lot A included what is now Lot W.

[¶ 11.] Through the years Lot A, which includes Lot W, changed ownership many times with Tibbitts eventually acquiring title in 1991. None of the prior grantors of Lot A expressly reserved fee in the street. As a result, all of the various conveyances of Lot A passed title to "the soil of the highway in front, to the center thereof." SDCL 43–25–29. By law, the highway easement platted as Lot W reverted to the owner of the land when it was abandoned by the State in 1980. South Dakota law sets forth the reversion as follows:

> If the Department of Transportation or any board of county commissioners determines that any lands ... acquired as public use easements are no longer required for use in constructing or repairing public highways, the Transportation Commission or the board shall adopt a resolution to that effect and such lands shall revert to their former owner or his assigns.

SDCL 31–19–60. Thus, the rights in Lot W reverted to Tibbitts as the assignees of the original owner of those rights.

[¶ 12.] Much of Anthem's argument focuses on plats that were executed long after the 1937 conveyance of Lot A. These later plats included all of the abandoned highway right of way as part of Tract 2, which is now owned by Anthem. However, we have determined that the 1937 conveyance of Lot A included the adjacent highway right of way land because the highway land was not expressly reserved by the grantor of Lot A. Any discrepancies or mistakes in later plats are irrelevant to the true and rightful ownership of the highway right of way land. What is now Lot W was conveyed as part of Lot A and is included in Lot A. Later plats that erroneously included Lot W as part of Tract 2 do not have the effect of legally transferring ownership of the property.

[¶ 13.] The trial court determined that the State held fee title to Lots W and W–1; and when the land was abandoned by the State, it reverted to the adjacent landowners pursuant to SDCL 43–16–3.[5] Although the trial court was incorrect as to the property interest held by the State, the ultimate decision of the trial court was correct.

[¶ 14.] The trial court is affirmed.

[¶ 15.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.

---

5. SDCL 43–16–3 provides: "An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown."