#24580-aff in pt, rev in pt & rem-JKK
**2008 SD 78**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *

| | |
|---|---|
| MARVIN E. TRIPP and DONNA TRIPP DE SCHEPPER, a/k/a DONNA DE SCHEPPER, | Plaintiffs and Appellants, |
| v. | |
| F & K ASSAM FAMILY, LLC, a South Dakota limited liability company; SAMUEL R. ASSAM and LORI R. DEWITT, As Co-trustees of the Assam Credit Trust Established under the Fred Assam Revocable Inter Vivos Trust Agreement dated July 29, 1987, as amended; SAMUEL R. ASSAM, Trustee of the Kay Assam Trust, | Defendants and Appellees, |
| and | |
| VIOLA LAPE; MARQUITA CHAVEZ and RITA R. CHAVEZ; JOHN T. LAPE a/k/a JOHN LAPE and JANET C. LAPE; CITY OF SIOUX FALLS, SOUTH DAKOTA, a municipal corporation, THE ILLINOIS CENTRAL RAILROAD COMPANY, f/k/a ILLINOIS CENTRAL GULF RAILROAD COMPANY; THE UNKNOWN HEIRS, DEVISEES, LEGATEES, EXECUTORS, ADMINISTRATORS or CREDITORS OF H.C. ALDRICH, Deceased; and all persons unknown who have or claim to have interest of Estate in or lien or encumbrance upon the premises described in the Complaint, | Defendants. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA
* * * *

HONORABLE KATHLEEN K. CALDWELL
Judge
* * * *

ARGUED ON APRIL 22, 2008

OPINION FILED **08/06/08**

JAMES E. MOORE of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls, South Dakota

Attorneys for plaintiffs
and appellants.

TIMOTHY GRANDE
PATRICK J. SUMMERS of
Mackall, Crounse & Moore, PLC
Minneapolis, Minnesota

THOMAS J. VON WALD
JOHN P. MULLEN of
Bangs, McCullen, Butler, Foye
& Simmons, LLP
Sioux Falls, South Dakota

Attorneys for defendants and
appellees F & K Assam Family,
LLC, Samuel R. Assam &
Lori R. DeWitt.

#24580

KONENKAMP, Justice

[¶1.]    Two landowners dispute title on two parcels of land, a 100-foot strip and a 33-foot strip. One landowner claims title based on two deeds and the other through adverse possession and reversionary interests. After several motions and cross motions for summary judgment, the circuit court quieted title to both parcels in favor of the deed holder. We affirm in part, reverse in part, and remand.

**Background**

[¶2.]    Marvin and Donna Tripp dispute title to two parcels of land in Sioux Falls, South Dakota, held by F&K Assam Family, LLC. One parcel is a 100-foot strip of land originally deeded to the Cherokee and Dakota Railroad in 1888, by Eunice and Herbert Aldrich through an instrument entitled "Right of Way Deed." In a separate deed, also from 1888, the Aldrichs conveyed to the railroad a 33-foot strip adjacent to the 100-foot strip. At some point, the Cherokee and Dakota Railroad became the Illinois Central Gulf Railroad Company. Then, in 1984, Illinois Central conveyed to Assam by special warranty deed several parcels of land in Minnehaha County, including the land conveyed by the two 1888 deeds from the Aldrichs to the Cherokee and Dakota Railroad.

[¶3.]    In 2002, the Tripps brought an action against various defendants to quiet title to a portion of the 100-foot strip and 33-foot strip adjacent to their land. They asserted title to the portion of the 100-foot strip based on their claim that the Aldrichs conveyed to the railroad an easement in 1888, and when the railroad abandoned its easement interest in 1984, ownership reverted to the Tripps as adjacent landowners. The Tripps claimed title to the 33-foot strip by adverse

-1-

possession.  Although the Tripps' suit was against various defendants, this appeal only concerns Assam.  In response to the Tripps' quiet title action, Assam counterclaimed to quiet title to the same property.  Because Illinois Central conveyed to Assam a fee interest in the properties in 1984, Assam asserted fee ownership of both parcels.

[¶4.]          The parties filed cross motions for summary judgment.  On January 23, 2003, the circuit court issued a memorandum decision.  As to the 100-foot strip, the court declared that Illinois Central conveyed to Assam fee title in 1984, and therefore, nothing reverted to the Tripps.  It then found that the Tripps could not adversely possess the 33-foot strip because the 1888 deed contained language indicating that the property was for public use.  In an order incorporating the memorandum decision, the court denied the Tripps' motion for summary judgment and granted Assam's motion to the extent that the railroad conveyed to Assam fee simple title.

[¶5.]          The Tripps' petition for an intermediate appeal was denied.  The parties then requested a decision from the circuit court on whether the 1888 deed, related to the 33-foot strip, could be judicially modified because it failed to convey a bounded parcel.  It is undisputed that the 1888 deed from the Aldrichs to the Chicago and Dakota Railroad purporting to convey a 33-foot strip of land did not convey a bounded parcel.  Assam asserted that the parties intended the deed to convey the disputed 33-foot strip and requested the necessary reformation.  The Tripps, on the other hand, argued that the statute of limitations expired on Assam's right to reformation.  The Tripps further asserted that if the court were to reform

the deed, it should only change one word in the deed's language, which would then suffice to describe a bounded parcel, but not the disputed 33-foot strip they claimed title to by adverse possession.

[¶6.]      In a memorandum decision, the circuit court refused to reform the deed at that time. It concluded that there was an issue of fact on when Assam discovered that the 1888 deed failed to describe a bounded parcel, and therefore, whether the statute of limitations expired. The court ordered a trial on the merits. In response, the parties stipulated that the mistake was discovered by Assam in 2000. Thereafter, the court incorporated all previous memorandum decisions and orders and held that the statute of limitations had not expired on Assam's request for reformation. The court then reformed the deed to describe a bounded parcel. According to the court, the reformed deed identified a parcel consistent with that described by the Tripps' complaint and Assam's counterclaim. Because the court previously declared that the deed conveying the 33-foot strip "makes clear the [33-foot] strip was intended for public use, thereby negating the hostility element necessary for adverse possession prior to 1984" the court quieted title in favor of Assam to the newly described 33-foot strip. The court also quieted title in favor of Assam on the 100-foot strip.

[¶7.]      On appeal, the Tripps contend that (1) the 1888 right-of-way deed only conveyed an easement, not fee title, (2) ownership of that easement property reverted to the Tripps on abandonment by the railroad, (3) the circuit court abused its discretion when it reformed the 1888 deed, related to the 33-foot strip, without evidentiary support, (4) the statute of limitations expired, thus precluding

reformation, and (5) the Tripps established that they adversely possessed the 33-foot strip.

**Analysis and Decision**

### 1. The 100-Foot Strip

[¶8.] We first address the Tripps' claim that the 1888 deed from the Aldrichs to the Cherokee and Dakota Railroad conveyed only an easement interest in the 100-foot strip. According to the Tripps, since the deed is entitled "Right of Way Deed" and contains limiting language, the Aldrichs intended only to convey an easement interest. Assam, on the other hand, asserts that this Court's precedent supports the circuit court's conclusion that a conveyance of fee title was intended. In particular, Assam points to the absence of reversionary language and the warrant of title the Aldrichs gave on the property.

[¶9.] A grant of real property presumes fee simple title "unless it appears from the grant that a lesser estate was intended." SDCL 43-25-15; *see also* Meyerink v. Nw. Pub. Serv. Co., 391 NW2d 180, 182 (SD 1986). We examine the instrument as a whole to determine what type of conveyance was intended. *Meyerink*, 391 NW2d at 182 (citing Northwest Realty Co. v. Jacob, 273 NW2d 141, 144 (SD 1978)). "[O]nly when construction of the instrument as a whole leaves the intention of the parties in doubt should consideration be given to the situation and circumstances of the parties at the time of the execution of the deed." *Id.* (citing *Northwest Realty*, 273 NW2d at 145).

[¶10.] In 1888, the Aldrichs executed a deed entitled "Right of Way Deed" conveying a strip of land 100 feet wide "to have and to hold to said [Railroad]

Company and its successors and assigns forever, the aforementioned strip of land *for all purposes connected with the construction, maintenance and operation of a steam railroad over the same.*" (Emphasis added). The deed used right of way language in describing the railroad's right "to go outside of said *right of way* on the land above described to borrow material therefrom for embankment or to waste dirt thereon, and agree that the price to be paid for the land that may be so used, shall be in proportion to the price paid for said aforementioned *right of way, . . . .*" (Emphasis added). The Aldrichs warranted "the title to said strip of land against all persons whomsoever." They received $375 for the conveyance.

[¶11.]　　　In *Sherman v. Sherman*, the parties disputed whether an instrument conveyed to the railroad an easement or fee title. 23 SD 486, 122 NW 439, 442-43 (1909). The challenged deed conveyed real property to the Cherokee and Dakota Railroad "for the purpose of station grounds, tracks, side tracks, switches, and the location, construction, and convenient use of its railroad, but for no other purpose[.]" *Id.* at 441. The deed indicated that the railroad "discharge[d] and forever release[d]" the grantors "from all claims whatsoever[.]" *Id.* at 442. Despite the deed's language limiting the purpose to use as a railroad, the Court held that fee title was intended. When the deed was considered as a whole, it was evident that a lesser estate was not intended. In particular, there was no provision reserving a right in the grantor to reenter if the property ceased its use for railroad purposes. *Id.* Moreover, full market value was paid in consideration, and the grantors were released from all claims. *Id.* at 444.

[¶12.]     Similarly, in *Nystrom v. State*, the Court construed the following language to pass an "unqualified title in fee and not an easement:"

> 'all the estate, right, title, interest, claim and demand whatsoever' of the grantor 'either in law or in equity, of, in and to the above bargained premises, with the hereditaments and appurtenances.  To have and to hold the said premises above bargained and described, with the appurtenances, unto the said party of the second part, its successors and assigns forever. . . . And the said party of the first part hereby expressly waives and releases . . . all damages to the lands of said party of the first part which have been or may hereafter be caused by *reason of the construction, maintenance and operation of a railroad* on said granted premises or by reason of any lawful use whatever of said granted premises by said party of the second part, its successors or assigns'.

78 SD 498, 499-500, 104 NW2d 711, 712 (1960) (emphasis added).  In concluding that a fee title was conveyed, the Court noted that "[t]he conveyance is not limited by its terms to [a] railroad right of way or tracks and there is no reverter clause or conditions." *Id.*

[¶13.]     In *Meyerink*, this Court again examined a deed to a railroad company that contained right of way language.  391 NW2d at 182.  The deed was captioned "right-of-way deed," but the Court held that when considered as a whole "it is clear that transfer of fee title, not a lesser estate, was intended." *Id.* at 182-83.  The Court noted "that the landowners 'will forever Warrant and Defend the title to the premises hereby conveyed'" and that this language "is clearly the language of a conveyance in fee or, more specifically, a warranty deed." *Id.* at 183.

[¶14.]     As in *Sherman, Nystrom,* and *Meyerink*, we conclude that the limiting language in the Aldrich deed is insufficient to establish that a lesser estate was intended.  True, the deed is entitled "Right of Way Deed" and contains language

purporting to limit the railroad's use of the property. But this language must be contrasted with the provisions in the deed indicating that a permanent conveyance was intended. First, the deed conveyed the property to the railroad "to have and to hold . . . [along with] its successors and assigns forever." Second, the deed did not reserve a right to reenter if the property ceased to be used for railroad purposes. Third, the deed warranted the railroad's title to the property "against all persons whomsoever." Reading the language of the deed in its entirety, we conclude that the 1888 deed from the Aldrichs to the Cherokee and Dakota Railroad conveyed fee title to the 100-foot strip.

[¶15.] Nevertheless, the Tripps insist that *Northwest Realty Co.*, 273 NW2d at 144 and *Tibbitts v. Anthem Holdings Corp.*, 2005 SD 26, 694 NW2d 41 would support a finding that an easement was intended. The Tripps' reliance on *Tibbitts* is misplaced. That case involved a conveyance of property to a county for use as a highway, implicating a different analysis. *See* 2005 SD 26, ¶7, 694 NW2d at 44. When this Court reviews a conveyance to the State or a county for highway purposes, we do not presume fee title. *See* Pluimer v. City of Belle Fourche, 1996 SD 65, ¶15, 549 NW2d 202, 205 (the general presumption does not apply). On the contrary, "in the absence of express statutory authorization otherwise, when the state acquires private property for highway right of way it merely acquires an easement and fee title remains in the abutting landowner." Cuka v. State, 80 SD 232, 236, 122 NW2d 83, 85 (1963) (citing Edmison v. Lowry, 3 SD 77, 52 NW 583 (1892); Meek v. Meade County, 12 SD 162, 80 NW 182 (1899); Sweatman v.

Bathrick, 17 SD 138, 95 NW 422 (1903); Henle v. Bodin, 54 SD 46, 222 NW 492 (1928)).

[¶16.]     In *Northwest Realty Co.,* the Court examined an instrument containing language purporting to convey fee simple title, while identifying the grant as a right of way.  273 NW2d at 144.  After the Court considered the instrument as a whole, it could not determine the intent of the parties.  273 NW2d at 144-45.  Therefore, the Court applied a seven-factor test to assess the circumstances and situation of the parties at the time the deed was executed.  The factors include:

> (1) the amount of consideration; (2) the particularity of the description of the property conveyed; (3) the extent of the limitation upon the use of the property; (4) the type of interest which best serves the manifested purpose of the parties; (5) the peculiarities of wording used in the conveyance document; (6) to whom the property was assessed and who paid the taxes on the property; and (7) how the parties to the conveyance, or the heirs or assigns, have treated the property.

*Id.* at 145 (citing Sohio Petroleum Co. v. Hebert, 146 So2d 530, 535 (LaCtApp 1962)) (additional citations omitted).  Applying this test, the circumstances surrounding the grant led the Court to conclude that a lesser estate was intended.  *Id.*

[¶17.]     Although *Northwest Realty Co.* did not involve a conveyance to a railroad company, a review of the seven factors in this case supports a conclusion that fee title was intended by the Aldrichs and the Cherokee and Dakota Railroad in 1888.  The railroad paid the Aldrichs $375 for 3.03 acres of land.  The deed described the land with particularity, as evinced by the fact that its exact location can be determined.  *See id.* ("[e]asements do not require a definite statement of their width, dimensions, or exact location").  It is true that the parties limited the conveyance "for all purposes connected with the Construction, Maintenance and

operation of a steam railroad[.]" However, the extent of the limitation supports the inference that the Aldrichs intended to pass fee title. This is because the Aldrichs imposed no conditions on the grant and did not reserve an interest or a right to reenter if the land ceased being used for railroad purposes. *See Sherman*, 23 SD 486, 122 NW at 444 ("There is nothing in the instrument in question reserving in the grantors any use of or dominion over the land, nor any provision whereby the grantors might re-enter or resume possession in case it was not used for railway purposes.").

[¶18.] While the type of interest that would best serve the manifest purpose of the parties is not determinative either way, and the peculiarities of the wording used in the conveyance are not helpful, because the deed warrants title "against all persons whomsoever," this is additional support that the Aldrichs intended to convey fee title. *See Meyerink,* 391 NW2d at 183-84; *see also Sherman*, 23 SD 486, 122 NW at 443. Finally, no evidence was presented to demonstrate that the parties' heirs and assigns treated the property as if a limited interest was conveyed. In fact, both the Cherokee and Dakota Railroad and its successor, the Illinois Central Gulf Railroad Company, treated the property as if they held it in fee. Indeed, Illinois Central conveyed fee title to Assam in 1984. Thus, the parties' reasonable commercial expectations in holding and transferring property were maintained.

[¶19.] Because the 1888 deed conveyed to the railroad fee title to the 100-foot strip, Assam became the fee owner of that strip with the deed from Illinois Central. And because Assam is the fee owner, there is no need to address the Tripps' claim

that the property reverted to them as the adjacent landowners when the railroad abandoned its interest.

### 2. The 33-Foot Strip

[¶20.] We next address the Tripps' claim that the statute of limitations precluded reformation of the second 1888 deed, which Assam argues intended to convey the disputed 33-foot strip. Assam asked the circuit court to reform the 1888 deed from the Aldrichs to the Cherokee and Dakota Railroad to describe a bounded parcel. The Tripps do not dispute that the deed failed to describe a bounded parcel, but contend that the ten-year statute of limitations expired on Assam's right to request reformation. According to the Tripps, Assam was constructively aware of the defect in the deed when the instrument was recorded in 1984.

[¶21.] When an error or mistake has been made, equity allows a court to reform a written instrument to reflect the real intention of the parties. Enchanted World Doll Museum v. Buskohl, 398 NW2d 149, 152 (SD 1986); Burke v. Bubbers, 342 NW2d 18, 20 (SD 1984); Garber v. Haskins, 84 SD 459, 464, 172 NW2d 721, 723 (1969); Essington v. Buchele, 79 SD 544, 548, 115 NW2d 129, 131 (1962); Craig v. Nat'l Farmers Union Auto. & Cas. Co., 76 SD 349, 354, 78 NW2d 464, 466 (1956). A party's right to reformation, however, is subject to the limitation that "such relief cannot be granted against a bona fide purchaser or incumbrancer for value and without notice." Farmers' & Merchants' Bank v. Citizens' Nat'l Bank of Sisseton, 25 SD 91, 125 NW 642, 644 (1910) (citations omitted); *see also* SDCL 21-11-1.

[¶22.] Here, there is no bona fide purchaser or encumbrancer for value protesting Assam's request for reformation. Therefore, whether Assam was

constructively aware of the defect in the 1888 deed is immaterial. Because the Tripps are not bona fide purchasers for value, they are in no position to complain of or prevent the reformation of the 1888 deed. *See* Nash Finch Co. v. Rubloff Hastings, L.L.C., 341 F3d 846, 850 (8thCir 2003) (the party opposing reformation has the burden of proving that it is a bona fide purchaser for value). There being no intervention by an innocent purchaser, the circuit court did not err when it acted to reform the deed. *See Enchanted World Doll Museum*, 398 NW2d at 152; *see also* Owens v. Owens, 135 So 87, 89 (LaCtApp 1931); Michigan Trust Co. v. Land Owners Ass'n, 284 NW 894, 900 (Mich 1939).

[¶23.] Lastly, the Tripps assert that even if the statute of limitations does not preclude reformation, the reformed deed does not describe the *disputed* 33-foot strip, and therefore, the court erred when it did not quiet title in favor of them based on their claim of adverse possession. According to the Tripps, Ernest Carlsen's affidavit and deposition testimony prove that the deed should have been reformed to change only one word, and that if so reformed, the deed would describe a parcel immediately southwest of the disputed 33-foot strip.[*] Assam, however, asserts that "the legal description in the January 1888 Deed and a comparison with the 1889 Plat shows that the deed as reformed by the [court] is supported by the record."

---

[*] The Tripps asked us to take judicial notice of, or supplement the record with, a plat recorded in the office of the Minnehaha County Register of Deeds on April 26, 1889. We will take judicial notice of the plat. However, this plat, like the rest of the evidence in the record, does not assist us in determining where the property in the reformed deed is located.

-11-

[¶24.] While we review a circuit court's decision to reform a deed under the abuse of discretion standard, the court's finding on the intent of the parties and resulting reformation must be supported by the record. *Burke*, 342 NW2d at 21. Moreover, plaintiffs seeking reformation must prove their "cause of action by clear, unequivocal and convincing evidence." Northwestern Nat'l Bank of Sioux Falls v. Brandon, 88 SD 453, 458-59, 221 NW2d 12, 15 (SD 1974) (citing *Craig*, 76 SD at 354, 78 NW2d at 466; Brooks, Inc. v. Brooks, 86 SD 676, 679, 201 NW2d 128, 129 (1972)).

[¶25.] The 1888 deed originally contained the following legal description:

> Commencing at a point Nine Hundred and Fifty (950) feet west and Eighty three (83) feet north of the Southeast Corner of the Southwest Quarter (1/4) of Section Thirteen (13), Township One Hundred and One (101) North, Range Forty-Nine (49) West of the 5th P.M.; thence North Thirty-Three (33) Feet; thence Southeasterly parallel to the center line as now located of the line of Railroad of the Cherokee and Dakota Railroad Company, Six Hundred & Thirty-two feet, thence South Thirty-Three (33) Feet; thence Northeasterly along the North Line of the Right-of-Way of said Six Hundred & Thirty-to feet to place of beginning.

The circuit court reformed the deed as follows:

> Commencing at a point *Six Hundred and Thirty-Two (632)* feet west and *One Hundred Twenty-Six and One-Half (126 ½)* feet north of the Southeast Corner of the Southwest Quarter (1/4) of Section Thirteen (13), Township One Hundred and One (101) North, Range Forty-Nine (49) West of the 5th P.M.; thence North Thirty-Three (33) Feet; thence *Southwesterly* parallel to the center line as now located of the line Railroad of the Cherokee and Dakota Railroad Company, *Nine Hundred and Fifty (950)*, thence South Thirty-three (33) Feet; thence Northeasterly along the North Line of the Right-of-Way of said *Railroad Nine Hundred and Fifty Feet (950)* to place of *Beginning.*

(Emphasis to note reformations).

[¶26.] The court noted that the reformed "deed describes the same property referred to as the 'Tripp Property' in Count 1 of [the Tripps'] amended complaint and is the same property for which the Assam Defendants seek to quiet title in their name as set forth in paragraph 2 of the Assam Defendants counterclaim for quiet title." Based on our review of the record, including the complaint, counterclaim, affidavits, plats, exhibits, and transcripts, there is nothing to support the proposition that the reformed deed describes the parcel intended by the Aldrichs in 1888, or describes the *disputed* 33-foot strip the Tripps claim title to by adverse possession.

[¶27.] Assam asserts that a railroad map created at the time of the 1888 deed and a plat filed on April 25, 1889, provide evidentiary support for the reformation by the court. According to Assam, the "strip begins 632 feet west of the section line and continues in a southwesterly direction along the north side of the railroad right of way." What "section line" Assam is referring to, where on that section line, and what constitutes "632 feet west" cannot be determined from the record. While there are multiple plats and diagrams in the record, none contain a drawing or any other marking identifying the reformed bounded parcel. Moreover, there is nothing to assist us in determining how the reformed parcel relates to the disputed 33-foot strip.

[¶28.] There being no evidence to support the court's finding that the reformed deed describes the same property the Tripps assert title to by adverse possession, we reverse for the taking of further evidence and remand the court's decision quieting title in the disputed 33-foot strip in favor of Assam. Thereafter,

#24580

depending on the court's findings, the Tripps' claim for adverse possession may be addressed.

[¶29.]    Affirmed in part, reversed in part, and remanded.

[¶30.]    GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.

-14-