(628 P.2d 1069)

No. 51,544

HENRY MARTELL, d/b/a HANK MARTELL OIL COMPANY, *Plaintiff-Appellee,* v. GEORGE STEWART, EARL STUCK and ALTA FRENCH, *Defendants-Appellants.*

Opinion filed May 29, 1981.

*Clyde M. Burns,* of Burns & Burns, P.A., of Lyndon, for defendants-appellants.

*Eric Kjorlie,* of Topeka, for plaintiff-appellee.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

WOLESLAGEL, J.: This case was filed after defendant landowners refused to let the plaintiff remove ballast that had been used on a railroad right-of-way. The plaintiff claimed ownership of the ballast as the final assignee of removal and entitlement rights by purchase from the railroad company. The defendants claimed ownership under the law of abandoned railroad property, as they became reversionary owners of the land upon abandonment of the right-of-way.

After court trial, the trial judge decided ownership to be in the plaintiff and he granted the parties the privilege of agreeing on a proper time for the plaintiff to remove the ballast, but, should they not agree, he retained jurisdiction to himself establish removal time. Defendants appeal; we affirm.

In June of 1975, the Atchison, Topeka and Santa Fe Railway Company contracted with the L. B. Foster Company of Houston, Texas, to "[r]emove tracks and structures and miscellaneous materials," from its right-of-way between Emporia and Moline, Kansas. The contract provided that Foster was to complete removal by March 31, 1976, unless, on written application, the time was extended by Santa Fe's engineering department.

Foster made an assignment to another company and it, with Foster, in November, 1975, sold and assigned rights to the ballast to the plaintiff. Verbal time extensions were given plaintiff by the first assignee but plaintiff made no written requests for time extensions.

It is not clear from the record before us just when the tracks and ties were removed so that plaintiff could effectively get to the ballast, but it was not until late summer or fall of 1977 that he first removed some of it. At that time, one of the defendants insisted he leave and he was later denied permission to enter again on the land.

Plaintiff filed this suit December 30, 1977. Santa Fe filed valuations and paid ad valorem taxes on the right-of-way to January 1, 1978. On January 24, 1978, it filed a Declaration of Abandonment of the right-of-way with the Register of Deeds of Greenwood County.

On these factual findings, which were not disputed, the trial judge found abandonment of the right-of-way did not take place until January 24, 1978. The appeal of the defendants states one issue: Did the plaintiff have the right to the ballast on the right-of-way or had there been an abandonment resulting in both ballast and land reverting to the defendants?

The defendants claim that abandonment of the right-of-way took place when Santa Fe contracted with the Foster Company, but in no event later than March 31, 1976, the work completion date in that contract. The latter date is of some significance as it may be interpreted to be what experienced parties believed would be a reasonable time in which all property should be removed from the right-of-way. As stated in 74 C.J.S., Railroads § 117d, p. 544:

"Ordinarily, tracks, railroad structures, and other railroad equipment do not become part of the realty and such items belong to, and may be removed by, the railroad company, or its assignee, on abandonment of the right of way or within a reasonable time thereafter . . . ."

The cardinal principle to follow in determining when a railroad right-of-way is abandoned is that there must be satisfaction of what has been termed the "unitary rule." Simply stated, both intent to abandon and action to carry out that intent must combine. In *Pratt v. Griese,* 196 Kan. 182, 409 P.2d 777 (1966), the rule was stated by adopting a quotation from 74 C.J.S., Railroads § 117b, pp. 541-42:

"Whether a right of way has been abandoned by a railroad company is largely a question of intent, and it is generally held that in order to constitute an abandonment there must be an intent to relinquish, together with external acts by which the intent is carried into effect."

American Jurisprudence treats the principle a bit differently. It states that the acts "must be of a character so decisive and conclusive as to indicate a clear intent to abandon" and that intent "may be proved by an infinite variety of acts." 25 Am. Jur. 2d, Easements and Licenses § 103, pp. 507-08. Further, it states the intent must be "neither to use nor to retake the property" and the act must be "clear and unmistakable" and it must show a "purpose to repudiate . . . ownership." It claims that "relinquishment of the possession" is not an abandonment as the act must indicate a lack of any interest in the property. 1 Am. Jur. 2d, Abandoned, . . . Property § 16, pp. 16-17.

These principles refute defendants' contention that abandonment of the right-of-way took place as early as March 31, 1976. By putting a time extension clause in the contract with Foster, the railroad company expressed an interest in retaining at least the right of ingress and egress until such time as all property was actually removed.

Until the filing of the formal declaration of abandonment, there was no "clear and unmistakable . . . act indicating a purpose to repudiate . . . ownership." Even if the record before us showed when the tracks were removed, that would not be conclusive; many cases hold that track removal alone is not sufficient to support a finding of abandonment. See Annot., Railroad Right of Way—Abandonment, 95 A.L.R.2d 468, § 5, pp. 485-88.

As stated in *Pratt,* 196 Kan. at 185, "mere nonuse, for a limited time," is not proof of abandonment. In one case, nonuse for nine years was held to not support abandonment. *People v. Southern Pacific Co.,* 172 Cal. 692, 158 Pac. 177 (1916). In that case,

considerable reliance was placed on the implication of continuing interest in the property arising from the fact that the supposed abandoner kept paying taxes on the property. As noted before, Santa Fe's actions indicated a use of the right-of-way until all materials were removed and it filed valuations and paid taxes until after plaintiff was denied entrance by the defendants.

In short, there was no evidence of a specific and identifiable date of abandonment prior to the filing of the formal declaration which would require a finding contrary to that of the trial court. The trial court's findings of fact are supported by competent, substantial evidence sufficient to support the conclusion of law. That is the limit of our inquiry. *City of Council Grove v. Ossmann,* 219 Kan. 120, Syl. ¶ 1, 546 P.2d 1399 (1976).

Affirmed.