#24808-aff in pt, rev in pt & rem-JKK

**2009 SD 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JAMES A. SWABY; FRED K. ENING
JR.; WILLIAM W. MILLER and
LAUREL D. MILLER Co-Trustees
under the William W. Miller
Revocable Trust 50% interest
and Laurel D. Miller and William
W. Miller Co-Trustees of the
Laurel D. Miller Revocable Trust
50% interest; BARBARA J.
SPECTOR as Trustee of the
Spector Living Trust and MURIEL
A. HANNA as Trustee under
Declaration of Trust; ELWYN J. COLE;
CROOK MT. ANGUS RANCH, INC.;
ALBERT R. and LORI A TETREAULT;
BRIAN and HEIDE JANZ; JOHN and
PATRICIA DVORAK; BOBBY A. and
CINDY L. LADNER; RANDY G. and
LORI A. FRYER; WILLIAM R. and
TERESA FOX; DAVID J. FANDRICK;
DESPERADO INVESTMENTS, LLC;
TRACY L. and KELLY J. MCDANIELS;
and GERALD and EDITH MILES,                          Plaintiffs and Appellees,

        v.

NORTHERN HILLS REGIONAL
RAILROAD AUTHORITY; SOUTH DAKOTA
DEPARTMENT OF TRANSPORTATION;
SOUTH DAKOTA DEPARTMENT OF
GAME, FISH and PARKS,                                Defendants and Appellants,

        and

LAWRENCE COUNTY, a political
subdivision of the State of South
Dakota; DAKOTA, MINNESOTA
AND EASTERN RAILROAD COMPANY
("DM&E"); and the HEIRS, DEVISEES,

LEGATEES, EXECUTORS, ADMINISTRATORS,
OR CREDITORS OF THE FOLLOWING
DECEASED INDIVIDUALS: STEPHEN W.
MORGAN and FRANE E. MORGAN, husband
and wife; CHRISTIAN G. GRALAPP and
CHRISTIANA GRALAPP, husband and wife;
LYMAN D. PETTIT and HANNA M. PETTIT,
husband and wife; THOMAS S. NEWMAN;
ANDREW NORINE; GOTTFRIED BURGER;
RICHARD GRENFELL and GRACE GRENFELL,
and JOHN LEWIS and MARGARET LEWIS,
husband and wife; and ALL PERSONS
UNKNOWN WHO HAVE OR CLAIM TO
HAVE ANY INTEREST OR ESTATE IN OR
LIEN OR ENCUMBRANCE UPON THE
PREMISES DESCRIBED IN THE
AMENDED COMPLAINT,                               Defendants.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE RANDALL L. MACY
Judge

* * * *

ROGER A. TELLINGHUISEN
ERIC STRAWN of
Tellinghuisen & Gordon, PC                Attorneys for plaintiffs
Spearfish, South Dakota                   and appellees.

THOMAS E. BRADY
DYLAN A. WILDE of
Brady & Plumier, PC                       Attorneys for defendants
Spearfish, South Dakota                   and appellants.

* * * *

ARGUED ON NOVEMBER 4, 2008

OPINION FILED **07/08/09**

#24808

KONENKAMP, Justice.

[¶1.]	Plaintiff landowners brought suit to quiet title to certain railroad rights of way.  On cross motions for summary judgment, the circuit court quieted title in favor of the landowners.  To resolve this appeal, we must interpret several 1890 deeds and the General Railroad Right-of-Way Act of 1875.  We affirm in part, reverse in part, and remand.

## Background

[¶2.]	James Swaby, et al. (plaintiffs), brought a quiet title action against Northern Hills Regional Railroad Authority, et al. (NHRRA).[1]  Plaintiffs and NHRRA dispute title to certain property located in Lawrence County, South Dakota.  The parties filed cross motions for summary judgment and submitted stipulated material facts.  Those facts reveal that in 1890 several landowners executed deeds conveying a property interest in certain strips of land to the

---

1.	The plaintiffs include James Swaby, Fred Ening Jr., William and Laurel Miller as co-trustees of the William W. Miller Revocable Trust 50% interest and Laurel D. Miller Revocable Trust 50% interest, Barbara Spector as trustee of the Spector Living Trust, Murial Hanna as trustee under Declaration Trust, Crook Mt. Angus Ranch Inc., Albert and Lori Tetreault, Brian and Heidi Janz, John and Patricia Dvorak, Bobby and Cindy Ladner, Randy and Lori Fryer, William and Teresa Fox, David Fandrick, Desperado Investments, LLC, Tracy and Kelly McDaniels, and Gerald and Edith Miles.

	The defendants include Northern Hills Regional Railroad Authority, South Dakota Department of Transportation, South Dakota Department of Game, Fish, and Parks, Lawrence County, Dakota, Minnesota and Eastern Railroad Company, and the heirs, devisees, legatees, executors, administrators, or creditors of Stephen and Frane Morgan, Christian and Christiana Gralapp, Lyman and Hannah Pettit, Thomas Newman, Andrew Norine, Gottfried Burger, Richard and Grace Grenfell, John and Margaret Lewis, and all persons unknown who have or claim to have any interest or estate in or lien or encumbrance upon the premises described in the amended complaint.

-1-

Fremont, Elkhorn and Missouri Valley Railroad Company (FEMV).[2] FEMV had also obtained certain property interests in land under the General Railroad Right-of-Way Act of March 3, 1875 (1875 Act).[3] The land conveyed to FEMV by the 1890 deeds or obtained by the 1875 Act will be referred to as the "Right of Way."

[¶3.] In May 1890, FEMV located and graded a railroad route in the Right of Way. FEMV also filed a plat and profile of its Whitewood to Deadwood, South Dakota railroad with the United States Land Office in Rapid City, South Dakota. The plat and profile were approved by the Secretary of the Interior in June 1890. In 1903, FEMV conveyed its interest in the Right of Way to the Chicago and Northwestern Railway Company (CNW).

[¶4.] In 1970, CNW filed an application with the Interstate Commerce Commission (ICC) entitled, "Application for a Certificate of Public Convenience and Necessity Authorizing the Abandonment of a Line of Railroad between Whitewood and Deadwood, Lawrence County, South Dakota." The ICC issued a "Certificate and Order" on May 13, 1970, and the abandonment was confirmed. CNW removed its railroad tracks and no railroad service has since been conducted over the Right of Way.

[¶5.] In December 1970, CNW entered into an agreement with the State of South Dakota (State) to sell to the State a portion of the Right of Way. On May 30,

---

2. These landowners include Stephen and Frane Morgan, Lyman and Hannah Pettit, Andrew Norine, Gottfried Burger, Richard and Grace Grenfell, and Thomas Newman.

3. Christian and Christiana Gralapp and John and Margaret Lewis executed deeds in favor of FEMV conveying an interest in certain strips of land in 1890, all of which was right of way land from the 1875 Act.

1972, CNW quitclaimed its interest in the Right of Way to the State. On May 15, 1985, the State, through the South Dakota Department of Transportation (DOT), quitclaimed a portion of the Right of Way to the South Dakota Game, Fish, and Parks (GFP). On March 25, 2004, DOT quitclaimed all its remaining interest in the Right of Way to NHRRA. On June 16, 2006, Union Pacific Railroad Company quitclaimed all its interest in the Right of Way to NHRRA.[4] On October 17, 2006, the Dakota, Minnesota & Eastern Railroad Corporation quitclaimed all its interest in the Right of Way to NHRRA.

[¶6.] Plaintiffs are the successors in interest to the original owners of the Right of Way acquired by FEMV. In their motion for summary judgment, plaintiffs asserted fee title ownership of the Right of Way based on abandonment and rights of reverter. NHRRA countered that it is the fee owner, as the successor in interest to FEMV. In considering the parties' motions, the circuit court examined the Right of Way by dividing it into three property types: property conveyed by the 1875 Act; property conveyed in 1890 by private deeds with reversionary language; and property conveyed in 1890 by private deeds without reversionary language. With respect to each type of property, the court ruled that the Right of Way had been abandoned, and thus the property reverted to the heirs and assigns of the original owners. The court quieted title in certain Right of Way land in favor of plaintiffs.

---

4.      On October 1, 1995, CNW was merged into the Union Pacific Railroad Company.

#24808

The court also entered a default judgment against those who failed to answer plaintiffs' amended complaint.[5]

[¶7.]        NHRRA appeals.  In summary, it argues that the court erred when it quieted title in favor of plaintiffs and against NHRRA for the land conveyed by (1) the 1875 Act; (2) the 1890 deeds with reversionary language; (3) the 1890 deeds without reversionary language; and (4) the deeds that specifically excluded the Right of Way land.[6]

## Analysis and Decision

### 1. The 1875 Right of Way Act

[¶8.]        We discussed the 1875 Act in *Brown v. Northern Hills Regional Railroad Authority*, 2007 SD 49, 732 NW2d 732.

> Beginning in the 1800s, Congress enacted several bills which explicitly granted public lands to railroad companies to aid the construction of a cross-country railroad.  Barney [v. Burlington Northern R.R. Co.], 490 NW2d [726,] 729 [(SD 1992)] (citing Act of Sept. 20, 1850, 9 Stat 466).  Pursuant to these bills, "Congress gave generous land grants from the public domain to the railroads to subsidize the costs of the western expansion."  *Id*.  The expansion stretched from the 100th meridian from the

---

5.    Default judgment was entered against Stephen and Frane Morgan, Christian and Christiana Gralapp, Lyman and Hannah Pettit, Thomas Newman, Andrew Norine, Gottfried Burger, Richard and Grace Grenfell, John and Margaret Lewis, and all their heirs, successors, and assigns.

6.    "Summary judgment is proper when the law is correctly applied and there are no genuine issues of material fact."  Kirksey v. Grohmann, 2008 SD 76, ¶12, 754 NW2d 825, 827 (citing Rush v. U.S. Bancorp Equip. Fin., Inc., 2007 SD 119, ¶7, 742 NW2d 266, 268 (quoting Heib v. Lehrkamp, 2005 SD 98, ¶19, 704 NW2d 875, 882 (citing SDCL 15-6-56(c); Keystone Plaza Condo. Ass'n v. Eastep, 2004 SD 28, ¶8, 676 NW2d 842, 846))).  Here, however, "[t]he parties stipulated to the facts and thus our review is limited to determining whether the trial court correctly applied the law."  Economic Aero Club, Inc. v. Avemco Ins. Co., 540 NW2d 644, 645 (SD 1995).

> middle of Nebraska to California. *Id.* Because of mounting public criticism, the nature of the land grants changed in 1872. *Id.* "[T]he House of Representatives enacted a resolution condemning its policy of outright land grant subsidies to railroads." *Id.* (citing Leo Sheep Co. v. United States, 440 US 668, 99 SCt 1403, 59 LEd2d 677 (1979)). Instead, Congress began to reserve the land for homesteads and educational purposes. *Id.* Notwithstanding this changed policy, Congress continued to encourage the expansion of the West by enacting the 1875 Act, which authorized ROW [right of way] grants to railroads. *Id.* (citing 43 U.S.C. § 934).

*Id.* ¶9.

[¶9.] The United States issued land patents to homesteaders, passing title and ownership of certain public land to private individuals. *Id.* Some patents were issued subject to a railroad's right of way. *Id.* However, because the land patent at issue in *Brown* did not contain language indicating that the United States retained a reversionary interest in the right of way, we held that "whatever interest the United States retained in the ROWs [rights of way] through the 1875 Act was relinquished when land patents were issued[.]" *Id.* ¶22. The case was then remanded to determine whether the right of way had been abandoned.

[¶10.] Here, CNW's predecessor in interest, FEMV, acquired a right of way interest in public lands under the 1875 Act. The United States also issued land patents to certain predecessors in interest of plaintiffs.[7] These land patents were subject to the railroad's right of way. But, like the land patents in *Brown*, the patents here do not reserve any interest in the Right of Way in the United States. Therefore, under *Brown*, if the Right of Way has been abandoned, plaintiffs are the

---

7. One land patent was issued to Thomas Lewis in 1895; another to Christian Gralapp in 1892.

#24808

fee owners as the heirs, successors, or assigns of the original property owners.  *See id.*

[¶11.]     Plaintiffs contend that CNW abandoned the Right of Way in 1970, when it removed the railroad tracks and facilities and never again used the Right of Way for railroad purposes.  NHRRA, on the other hand, insists that despite CNW's application for abandonment with the ICC, it could not *legally* abandon the Right of Way "unless a specific Act of Congress would authorize such action."[8]  NHRRA contends that 43 U.S.C. §§ 912, 913 require this specific Act of Congress.  NHRRA insists these sections apply because 43 U.S.C. § 939 gave Congress the power to amend the 1875 Act.[9]

---

8.    NHRRA further contends that if abandonment is allowed the enactment of 43 U.S.C. §§ 912, 913 would have been unnecessary.  But as the United States Federal Claims Court remarked,

> The 1922 Act [43 U.S.C. § 912] was restating the obvious conclusion regarding the language of the 1875 Act and other right-of-way statutes that, in the absence of additional language, a right-of-way through public lands allowed for a limited use and did not reserve any fee type interests or reversionary rights as part of that right-of-way.  It would appear that the language of the 1922 Act was intended to address, clarify, and resolve issues created by the imprecise language employed by the courts on this subject in the early part of the twentieth century. . . .  In the alternative, it has been suggested that the 1922 Act applied only to pre-1871 grants to railroad companies because prior to that date railroad companies were issued outright land grants, as opposed to the rights-of-way granted to railroad companies after that date.

Beres v. United States, 64 FedCl 403, 419 (2005) (citing Great N. Ry. Co. v. United States, 315 US 262, 279, 62 SCt 529, 536, 86 LEd 836 (1942)).

9.    NHRRA avers that this Court did not consider 43 U.S.C. § 939 in *Brown,* which section gives Congress the right to amend 43 U.S.C. §§ 934-939 of the 1875 Act at any time.  There being no claim that 43 U.S.C. §§ 934-939 was altered, amended, or repealed, we need not address NHRRA's assertion.  More importantly, although Congress enacted 43 U.S.C. §§ 912, 913, which

(continued . . .)

[¶12.]    In *Brown*, we rejected the notion that sections 912 or 913 apply when the United States issues a land patent without specifically reserving an interest in the right of way. 2007 SD 49, ¶22, 732 NW2d at 740. The facts of this case fit squarely within our holding in *Brown*; therefore, sections 912 and 913 do not apply in this case. Nevertheless, NHRRA maintains that no abandonment can occur because a railroad cannot alienate its property interest acquired by a congressional act.[10] We can find no authority to support NHRRA's assertion. Rather, based on our review of the caselaw, courts across the nation, both federal and state, have declared railroad rights of way abandoned despite the fact that the rights of way were acquired by a federal act. *See* Denver & R.G.R. Co. v. Mills, 222 F 481, 486 (8thCir 1915) (recognizing that a right of way granted to a railroad by Congress can be abandoned). Most recently, courts have held that a railroad right of way is abandoned when converted to a recreational trail. Ellamae Phillips Co. v. United States, 77 FedCl 387, 394 (2007), *vacated on other grounds,* 564 F3d 1367 (FedCir

_____

(. . . continued)
some courts have construed to apply against the 1875 Act, this Court specifically rejected the applicability of those sections in facts such as presented here. *See Brown,* 2007 SD 49, ¶22, 732 NW2d at 740.

10.    None of the cases cited by NHRRA are relevant. Some examine the United States' right to have a right of way declared *forfeited* when a railway was never constructed on the land. *See* Schulenberg v. Harriman, 88 US 44, 63-64, 21 Wall 44, 63-64, 22 LEd 551 (1874) (forfeiture); Spokane & British Columbia Ry. Co. v. Washington & Great N. Ry. Co., 219 US 166, 174, 31 SCt 182, 184, 55 LEd 159 (1911) (forfeiture of publicly granted land requires appropriate judicial or legislative action); United States v. Washington Improvement & Dev. Co., 189 F 674, 682 (DWash 1911) (discussing forfeiture). Another case applies law related to different land grants. *See* Energy Transp. Sys., Inc. v. Union Pacific R.R. Co., 606 F2d 934 (10thCir 1979) (interpreting the land grant from an 1862 Act).

2009); *see also* Preseault v. Interstate Commerce Comm'n, 494 US 1, 13, 110 SCt 914, 922, 108 LEd2d 1 (1990) (abandonment by converting right of way to a recreational trail); Hash v. United States (*Hash II*), 403 F3d 1308, 1318 (FedCir 2005).

[¶13.]      Acknowledging that a right of way acquired by a congressional act can be abandoned, we must now determine what constitutes legal abandonment. South Dakota has not previously addressed the issue of abandonment of a railroad right of way. We note, however, that railroad rights of way implicate particularly unique property interests.[11]  *See* Hanson Indus., Inc. v. County of Spokane, 58 P3d 910, 914 (WashCtApp 2002) ("The chaos reflected in court decisions arises from the unique nature of railroad rights-of-way."). Thus, while our past cases discussing abandonment of easements might be instructive, we are particularly guided by the decisions of courts that have considered abandonment of railroad rights of way.

[¶14.]      In addressing abandonment of rights of way, courts have invoked common law abandonment principles. Chatham v. Blount County, 789 So2d 235, 241 (Ala 2001); Hinojos v. Lohmann, 182 P3d 692, 701 (ColoCtApp 2008); Martell v. Stewart, 628 P2d 1069, 1070-71 (KanCtApp 1981); Washington Sec. and Inv. Corp.

---

11.   We have discussed abandonment of easements under SDCL 43-13-12, recognizing that the intent to abandon must be proved by clear and convincing evidence. Graves v. Dennis, 2004 SD 137, ¶11, 691 NW2d 315, 318 (citing Cleveland, 1998 SD 91, ¶26, 582 NW2d 720, 725; Mueller v. Bohannon, 589 NW2d 852, 859 (Neb 1999)). "'[T]here must be an affirmative act of abandonment on the part of the owner of the easement to extinguish the easement. Mere nonuse of an easement, created by grant, is insufficient to satisfy this requirement.'" *Id.* (quoting Hofmeister v. Sparks, 2003 SD 35, ¶13, 660 NW2d 637, 641 (citing Clark v. Redlich, 305 P2d 239, 244 (CalCtApp 1957))).

v. Horse Heaven Heights, Inc., 130 P3d 880, 884-85 (WashCtApp 2006).  One court considered state-specific statutory abandonment law.  Macerich Real Estate Co. v. City of Ames, 433 NW2d 726, 729 (Iowa 1988).  And, depending on the circumstances, other courts have considered federal enactments, such as 43 U.S.C. §§ 912, 913.  Marshall v. Chicago and Nw. Transp. Co., 31 F3d 1028, 1032 (10thCir 1994); *Washington Securities and Inv. Corp.*, 130 P3d at 885-86.

[¶15.]        Since at least 1920, railroad abandonment of rail line has been regulated by the Interstate Commerce Commission (ICC), which is now the Surface Transportation Board (STB).  *See* 49 U.S.C. § 10903 (1995).  While authorization from the ICC or other authority to abandon a rail corridor is indicative of the railroad's intent to abandon its right of way, the authorization is generally not conclusive evidence of abandonment.[12]  *See* Schnabel v. DuPage County, 428 NE2d 671, 677 (IllCtApp 1981) (citing Lake Merced Golf & Country Club v. Ocean Shore R.R. Co., 23 CalRptr 881 (CalCtApp 1962); Faus v. Pacific Elec. Ry. Co., 303 P2d 814 (CalCtApp 1957); City Motel, Inc. v. State *ex rel.* State Dept. of Highways, 336 P2d 375 (Nev 1959)); Michigan Dept. of Natural Res. v. Carmody-Lahti Real Estate, Inc., 699 NW2d 272, 287 (Mich 2005); *In re* Condemnation by County of Lancaster, 909 A2d 913, 920 (PaCommwCt 2006); *see also* City of Aberdeen v. Chicago and N. W. Transp. Co., 602 FSupp 589, 591 (DSD 1984); *but see* Kansas City Area Transp. Auth. v. 4550 Main Assoc., Inc., 742 SW2d 182, 191 (MoCtApp 1986) ("An intention

---

12.    We previously recognized that ICC approval of abandonment does "not determine that abandonment has actually occurred." *Barney*, 490 NW2d at 732, *overruled on other grounds by Brown*, 2007 SD 49, 732 NW2d 732,

(continued . . .)

to abandon is inferred by the discontinuance of rail service with no prospect for resumption of service.").

[¶16.] "'[I]n order to establish that a railroad has abandoned its right-of-way easement, it is necessary to prove actual relinquishment and the intention to abandon the use of the premises.'" Nat'l Wildlife Federation v. ICC, 850 F2d 694, 703 (DCCir 1988) (quoting *Schnabel*, 428 NE2d at 676); *Martell*, 628 P2d at 1070. Intent to abandon can be inferred from the circumstances. *Nat'l Wildlife Federation,* 850 F2d at 703. "[M]ere non-use is probative of such intent but may not be sufficient in itself to demonstrate abandonment." *Id.*; *see also Martell,* 628 P2d at 1071. Yet, when nonuse "destroy[s] either the object for which the easement was established or the means of its enjoyment[,]" abandonment is established. *Schnabel*, 428 NE2d at 676.

[¶17.] Here, the stipulated facts show that in 1968, CNW issued a board resolution stating that "the abandonment of the [rail] line will be advantageous to the economic and efficient overall operation" of the company and "said branch line is no longer necessary or expedient in the operation of such transportation system." The resolution directed that if authority was granted from the ICC for abandonment, the company was

> [a]uthorized to take such action as may be necessary or
> appropriate to consummate such abandonment in all respects;
> and the salvaging, sale or other disposition of said branch line
> and the materials, property, right-of-way and land incidental
> thereto, in whole or in one or more parts, for such consideration

_____

(. . . continued)
   (quoting Vieux v. East Bay Reg'l Park Dist., 906 F2d 1330, 1339 (9thCir
   1990)).

as shall be at least the substantial equivalent of the net salvage value thereof, and for the best prices obtainable for the right-of-way and land.

[¶18.]    In 1970, CNW filed an application for abandonment with the ICC. The application indicated that abandonment should be authorized because:

(a) the major shipper on the line is presently relocating to Whitewood, South Dakota, and the remaining shippers on the line do not ship sufficient volume to warrant maintenance of the line which is extremely difficult to operate because of the significant grades and almost continuous curvature;
(b) continued maintenance, reconstruction and rehabilitation of the line is not economically justified and would not be in the interest of the public or the Applicant; and
(c) rehabilitation and continued maintenance of the line required for continued operations constitutes an undue burden on interstate commerce.

The ICC issued CNW a certificate and order authorizing abandonment of the railroad. Thereafter, CNW removed its railroad tracks and facilities and abandonment was finalized. There has been no railroad service on the Right of Way since 1970. In 1972, CNW quitclaimed all interest and title in the Right of Way to the State of South Dakota. After a series of conveyances, NHRRA acquired its interest in the Right of Way in 2004 and 2006, from DOT, CNW's successor, Union Pacific Railroad Company, and Dakota, Minnesota & Eastern Railroad Corporation.

[¶19.]    Based on our review of the law governing railroad abandonments, we conclude that by filing an application with the ICC for a certificate of abandonment and asserting no intent to continue or resume use of the Right of Way, CNW exhibited its *intent* to abandon the Right of Way. When CNW entered into a contract with the State in 1970 to sell its interest in the Right of Way, CNW then made clear its intent to discontinue use of the property for easement purposes.

Finally, by removing the tracks and facilities and actually selling its interest to the State, CNW sufficiently relinquished its rights to the easement to constitute abandonment.

[¶20.]       NHRRA, nonetheless, insists that the act of selling the property to the State "is wholly inconsistent with relinquishment of the property" and inimical to abandonment.[13]  On the contrary, courts have consistently held that an attempt to convey or sell a right of way *easement* to others to be used for other purposes defeats the purpose of the easement and constitutes abandonment.[14]  *Chatham*, 789 So2d at 241; Cannco Contractors, Inc. v. Livingston, 669 SW2d 457, 459 (Ark 1984); *Lake Merced Golf & Country Club*, 23 CalRptr at 890-91; Mammoth Cave Nat'l Park Ass'n v. State Highway Comm'n, 88 SW2d 931, 935 (KyCtApp 1935); Seventy-Ninth Street Improvement Corp. v. Ashley, 509 SW2d 121, 123 (Mo 1974); Marthens v. B & O R.R. Co., 289 SE2d 706, 711-12 (WVa 1982); *see also* Buffalo Twp. v. Jones, 813 A2d 659, 665-66 (Pa 2002) (no intent to abandon when railroad attempted to sell or convey because the railroad *retained a right to reenter for future railroad use*). When CNW abandoned the Right of Way, the easement extinguished.  The circuit

---

13.    NHRRA relies on *Vieux*, 906 F2d at 1341 to claim that conveyance of property is inconsistent with an intent to abandon.  *Vieux*, however, is distinguishable, as the Ninth Circuit applied 43 U.S.C. §§ 912, 913 in addressing the issue of what constitutes abandonment of railroad rights of way.

14.    In *Tripp v. F & K Assam Family, LLC*, we noted that selling an interest in the property to a third party supports a finding that the railroad held fee title, rather than an easement.  2008 SD 78, ¶18, 755 NW2d 106, 112.  Here, however, we are not determining title; we are addressing the issue of abandonment of an *easement*.

court did not err when it quieted title in plaintiffs to the right of way property conveyed through the 1875 Act.

## 2. The 1890 Deeds with Reversionary Language

[¶21.]     The parties stipulated that the 1890 deeds conveyed to FEMV fee simple title in the disputed property.[15]  They disagree, however, on whether the conveyances were of fee simple title subject to conditions subsequent or fee simple determinable with possibilities of reverter.  The circuit court did not specifically identify which sort of estate the conveyances transferred.  Rather, the court called the grants a "right of way" and held that upon proof of abandonment the plaintiffs would regain ownership of the property.

[¶22.]     Construction of a deed is a question of law.  *See* Fisher v. Carolina S. R.R., 539 SE2d 337, 340 (NCCtApp 2000); Ray v. King County, 86 P3d 183, 186 (WashCtApp 2004); *see also* Brown v. Hodges, 61 SE2d 603, 606 (NC 1950).  "We examine the instrument as a whole to determine what type of conveyance was intended."  Tripp v. F & K Assam Family, LLC, 2008 SD 78, ¶9, 755 NW2d 106, 109 (citing Meyerink v. Nw. Pub. Serv. Co., 391 NW2d 180, 182 (SD 1986) (citing Nw. Realty Co. v. Jacobs, 273 NW2d 141, 144-45 (SD 1978))); *see also* Chevy Chase Land Co. v. United States, 733 A2d 1055, 1062 (Md 1999).  If the language of a deed

---

15.     The construction of a deed is a question of law and we are not bound by the parties' stipulation that fee title was intended.  *See* State Highway Comm'n v. Fortune, 77 SD 302, 313-14, 91 NW2d 675, 682-83 (1958) (this "Court is not bound by a stipulation of the parties as to the law").  Although plaintiffs stipulated that fee title was intended, in their appellate brief to this Court, counsel argued that the deeds conveyed mere easements.  Then, during oral argument, counsel for plaintiffs conceded that fee title was stipulated to and expressly abandoned the argument that the deeds conveyed only easements.

leaves doubt on the intention of the parties, we will consider all the attendant circumstances existing at the time of execution. *Tripp*, 2008 SD 78, ¶9, 755 NW2d at 109 (citing *Meyerink*, 391 NW2d at 182 (citing *Nw. Realty Co.*, 273 NW2d at 145)).

[¶23.]     A conveyance that creates a fee simple estate subject to a condition subsequent provides the grantor, heirs, and successors a *power to terminate* upon the happening of the stated event, i.e., when a condition is broken. Georgia, Ashburn, Sylvester & Camilla Ry. Co. v. Johnson, 174 SE2d 895, 897 (Ga 1970); Reichard v. Chicago, B. & Q. R. Co., 1 NW2d 721, 726-27 (Iowa 1942) (discussing estates in fee simple determinable and subject to conditions subsequent); Neb. Dept. of Roads v. Union Pacific R.R. Co., 490 NW2d 461, 464 (Neb 1992) (same); Lehigh Valley R.R. Co. v. Chapman, 171 A2d 653, 657 (NJ 1961) (same, but land was taken by condemnation); Oklahoma City v. Local Fed. Sav. & Loan Ass'n, 134 P2d 565, 569-70 (Okla 1943); *see also* Restatement (First) of Property § 45 (1936) (updated 2009); 28 AmJur2dEstates § 166 (2009).[16]  Language conveying this estate often uses terms such as "upon express condition that," "upon condition that," or "provided that." *Reichard*, 1 NW2d at 727.

[¶24.]     In contrast, a fee simple determinable estate *automatically expires* upon the occurrence of the stated event. *Georgia, Ashburn, Sylvester & Camilla Ry.*

---

16.     Other cases, not implicating railroad deeds, have discussed fee simple determinable and condition subsequent estates. *See* Richardson v. Holman, 33 So2d 641, 642 (Fla 1948); Pfeffer v. Lebanon Land Dev. Corp., 360 NE2d 1115, 1119-20 (IllCtApp 1977); Stolarick v. Stolarick, 363 A2d 793, 797 (PaSuperCt 1976). Also, secondary authorities have extensively compared the two estates. *See* 28 AmJur2dEstates §§ 26-47, §§ 151-196.

*Co.*, 174 SE2d at 897; *Reichard*, 1 NW2d at 727; *Neb. Dept. of Roads*, 490 NW2d at 464; *Lehigh Valley R.R. Co.*, 171 A2d at 657; *Oklahoma City,* 134 P2d at 569-70; Oregon Dept. of Transp. v. Tolke, 586 P2d 791, 795 (OrCtApp 1978); *see also* Restatement (First) of Property § 44 (1936) (updated 2009); 28 AmJur2dEstates § 26 (2009). Classic terms creating a fee simple determinable estate are "while," "so long as," "during," or "until." *Reichard*, 1 NW2d at 727; Thypin v. Magner, 28 NYS2d 262, 263-64 (NYAppTerm 1941). Courts have also noted that a fee simple determinable estate can be created without traditional terms when the purpose of the conveyance is limited and provides that upon the happening of a stated event the estate will revert to the grantor. *Pfeffer*, 360 NE2d at 1120 (determinable fee when defeasance language contains language of limitation); *Oregon Dept. of Transp.*, 586 P2d at 795.

[¶25.] Although the distinguishing characteristics of these two estates are easily expressed and universally recognized, interpreting such language in deeds has led to conflicting holdings. *See* School Dist. No. Six v. Russell, 396 P2d 929, 931 (Colo 1964) (noting confusion); *Reichard*, 1 NW2d at 727 (same). The confusion often arises because conveyances tend to employ terms and provisions common to both estates. Adding to the complexity in this case is the fact that the 1890 deeds involve a unique interest, railroad property. Nonetheless, our duty is to determine the intent of the parties from the documents as a whole. As one court remarked, "Little importance is now attached to the use of particular or formal words in the creation of these estates. . . . Such arbitrary distinctions smack too much of the over-refined technicalities of early English real property law. To give importance to

it is to 'pay tithe of mint and anise and cummin, and omit the weightier matters of the law.'" *Reichard*, 1 NW2d at 727 (citation omitted).

[¶26.]  Here, we have six 1890 deeds executed by private land owners to FEMV.[17]  Each deed contains a granting and habendum clause.  A granting clause makes up "[t]he words that transfer an interest in a deed or other instrument," while the habendum clause "defines the extent of the interest being granted and any conditions affecting the grant."  Black's Law Dictionary (8thed 2004).  In the granting clauses of all six deeds, the grantors indicate that they desire the construction of the railroad, and therefore, have given, granted, bargained, sold, conveyed, and confirmed certain property to the grantee, the railroad.[18]  The stated consideration ranges from $40, $82, $100, $150, $155, $249, $399, to $420.  Four deeds are entitled "Warranty Deed," one, a "Right of way deed," and one, a "Deed."[19]

---

17.  The six deeds include the following grantors:  Stephen and Frane Morgan, Lyman and Hannah Pettit, Thomas Newman, Andrew Norine, Gottfried Burger, and Richard and Grace Grenfell.

18.  The granting clauses, with certain variations, state:

> Witnesseth, That Whereas the said [FEMV] party of the second part, is about to construct a railroad and branches in Lawrence County, South Dakota and the said parties of the first part, being desirous of the construction of said railroad, and to aid the same by the grant herein made in consideration of the premises and the sum of [varying consideration between the deeds] to them . . . have given, granted, bargained, sold, conveyed and by these presents do give grant bargain sell convey and confirm to the said party of the second part, and to its successors and assigns forever, . . . .

19.  The Newman, Morgan, Pettit, and Norine Deeds are entitled "Warranty Deed."  The Burger Deed is entitled "Right of way deed" and the Grenfell Deed is entitled "Deed."

All six deeds convey a "strip of land," described in metes and bounds. However, the precise location of the strip is to be determined based on where the railroad is or will be located, and the conveyance is to be "over and across" the land described.[20] Finally, the habendum clause of each deed provides that if the railroad "shall abandon said road" the land conveyed "shall revert" to the grantors, their heirs, successors, and assigns.[21]

[¶27.]     Beyond these similarities, however, three deeds can be distinguished because they contain language in the granting and habendum clauses specifically limiting the conveyance for railroad purposes.[22]  As a result of this difference, we

---

20.    The deeds, although different in the location of the land, state:  "a strip of land (100) one hundred feet in width being fifty feet in width on each side of the center line of said railroad *wherever the same have been or may be definitely located over and across the following described land. . . ."* (Emphasis added.)  The Newman Deed provides "a strip of land from 100 to 200 feet in width being from 50 to 100 feet in width on each side of the center line of said railroad wherever the same have been or may be located over and across the following described land. . . ."  The Norine Deed provides "a strip of land *varying in width* from fifty (50) feet to one hundred & fifty (150) feet on each side of the center line of said Railroad wherever the same has been or may be definitely located over and across. . . ."  (Emphasis added.)

21.    In these six deeds, the habendum clauses state (with some minor differences),

> *Provided, That if* said railroad shall not be located and graded within two years [ten years for the Morgan, Norine, and Pettit Deeds] from the date hereof, or if at any time after said railroad shall have been constructed, the said party of the second part, its successors or assigns, *shall abandon said road*, or the route thereof shall be changed so as not to be continued over said premises the land hereby conveyed, and all rights in and to the same, *shall revert* to the said parties of the first part their successors and assigns.

(Emphasis added.)

22.    The Grenfell, Newman, and Burger Deeds contain the following limiting language in the granting clause:

(continued . . .)

analyze the six deeds using two sub categories: (A) those without limiting language and (B) those with limiting language.

*A. Deeds without Limiting Language*

[¶28.]     The 1890 deeds from Morgan, Norine, and Pettit grant certain property to FEMV without any provision in the granting or habendum clauses limiting the use of the conveyed land. Specifically, the granting clauses convey the entire estates without exceptions, reservations, or specifications on the use of the land. What we must determine, therefore, is whether the reversionary language in the habendum clauses, providing *that if* the railroad abandons its road, all right, title and interest in the conveyed land *shall revert* to the grantors, their heirs and assigns, creates fee simple determinable estates or fee simple estates subject to a condition subsequent.

_____
(. . . continued)

> . . . by these presents do give grant bargain sell convey and confirm to the said party of the second part, and to its successors and assigns forever, *for the purpose of constructing a railroad thereon and for all uses and purposes connected with the construction and use of said railroad, . . . .*"

(Emphasis added.) A further limitation in these deeds appears in the habendum clause:

> To Have, Hold and Enjoy the lands above conveyed, with appurtenances and privileges thereto pertaining and the *right to use* the said land and material whatsoever kind within the limits of the said above described land above conveyed unto the said party of the second part [FEMV] and to its successors and assigns forever, *for any and all uses and purposes connected with the construction, preservation, occupation and enjoyment of said railroad.*

(Emphasis added.)

[¶29.] Based on our review of the language of these deeds and the law related to determinable and conditional estates, we conclude that the parties intended to convey fee simple title subject to a condition subsequent. Although the grantors included reversionary language, the grantors in no way limited the use of the land conveyed for any particular purposes. There are also no restrictions, limitations, or reservations in the habendum clauses.

[¶30.] Courts faced with similar language common to both estates — "provided that" (condition subsequent) and "shall revert" (determinable fee) — have held that a fee simple estate subject to a condition subsequent was intended. *See Neb. Dept. of Roads*, 490 NW2d at 466-67; *Oklahoma City*, 134 P2d at 569-70; *see also* Concord & Bay Point Land Co. v. City of Concord, 280 CalRptr 623, 625-26 (CalCtApp 1991) (conveyance "upon the following terms and conditions" was a fee simple subject to conditions subsequent despite existence of "shall revert"); Hannah v. Southern Pac. R. Co., 192 P 304, 306 (CalCtApp 1920); Mouat v. Seattle L.S. & E. Ry. Co., 47 P 233, 234 (Wash 1896); *see also* Restatement (First) of Property § 45 cmt m (1936) (updated 2009). These courts reach this conclusion, in part, because the language employed by the grantors only imposed conditions subject to penalty of forfeiture if breached and did not otherwise limit the purpose of the conveyance. The courts also noted that the mere existence of "shall revert" is insufficient to create a fee simple determinable estate. *Neb. Dept. of Roads*, 490 NW2d at 466 (granting clause and habendum clause do not limit the estate); *see also Concord &*

*Bay Point Land Co.*, 280 CalRptr at 626 (conveyance did not limit for any purpose in the granting clause); *Oklahoma City*, 134 P2d at 570.[23]

[¶31.]     Because we conclude that the deeds without limiting language conveyed fee simple estates subject to a condition subsequent, we must now determine if any of the stated conditions have been breached. The only condition implicated in the Morgan, Norine, and Pettit Deeds is whether FEMV, "its successors or assigns, shall abandon said *road*. . . ." (Emphasis added.) NHRRA does not dispute that CNW ceased *service* of the railroad, but it contends that CNW and its successors in interest have never abandoned the *road*, in part, because CNW sold the property to the State.[24]

[¶32.]     To properly consider what actions can cause a breach of a condition, we do not interpret the word "road" in isolation. Rather, we consider all the words used to create the condition. The conditional sentence states,

> Provided, That if *said railroad* shall not be located and graded within ten years from the date hereof, or if at any time after *said railroad* shall have been constructed, the said party of the second part, its successors or assigns, shall abandon said *road*, or the route thereof shall be changed so as not to be continued over said premises the land hereby conveyed, and all rights in and to the same, shall revert to the said parties of the first part their successors and assigns.

---

23.   Another case, not involving railroads, has found the same. *See Pfeffer*, 360 NE2d at 1120 (defeasance language failed to limit).

24.   We are interpreting whether a specific condition in a deed has been breached, not whether an easement has been abandoned. Therefore, our analysis does not implicate, and is distinct from, abandonment of the easements discussed in the first issue.

(Emphasis added.) Under this language, a breach can occur by less action than that required for complete abandonment of the "property." The conditional sentence first requires that the "railroad" be constructed in ten years. It then states that after the "railroad" is constructed the "road" shall not be abandoned, or re-routed. Use of the terms "road" or "railroad" are not synonymous with "property" or "interest."

[¶33.] Therefore, while we agree with NHRRA that CNW's attempt to sell its *interest* in the property to the State exhibited an intent contrary to abandonment of the *property*, the question here is not whether CNW, its successors or assigns, abandoned the *property*. Rather, we must decide whether CNW's actions have *breached* the condition in the deeds that the *road* not be abandoned. Based on our review of the stipulated facts, when CNW removed all tracks and facilities in 1970, and no railroad service has since been conducted on that property, the condition was breached.

[¶34.] NHRRA next claims that if a breach has occurred, plaintiffs' right of re-entry is barred by the Marketable Title Act, SDCL 43-30-3, and the statute of limitations, SDCL 15-3-3. First, the Marketable Title Act does not apply to cause the expiration of conditions subsequent. *See* SDCL 43-30-12 ("This chapter shall not be applied to bar . . . conditions subsequent in any deed."). Second, unlike other states, South Dakota has no statute of limitations specifically related to breaches of conditions subsequent. *See* CalCivCode 885.050; 735 ILCS 5/13-102 (Illinois); MGLA 260 § 31A (Massachusetts); MDCodeRealProp 6-103 (Maryland); MSA 500.20 (Minnesota); NY RP ACT&PRO 612; VaCodeAnn 8.01-255.1. Moreover, SDCL 15-3-3 does not bar a claim for re-entry upon a breach of a condition

subsequent. Rather, it provides the statutory time for a landowner to take land back from someone attempting to establish adverse possession. [25] *Rotenberger v. Burghduff*, 2007 SD 19, ¶18, 729 NW2d 175, 180-81.

[¶35.]     When NHRRA obtained title to the property described in these deeds, it became the owner in fee subject to the conditions stated. *See In re* Opening and Extending of N. Conduit Ave., 27 NYS2d 841, 843-44 (NYAppDiv 1941). Because CNW breached a stated condition in 1970, the heirs, successors, and assigns of the original grantors (plaintiffs) have the power to terminate the estate. NHRRA has not provided any reason why plaintiffs' quiet title suit cannot be maintained. [26]

---

25.    NHRRA also asserts that the land has been adversely possessed by the State and NHRRA for the requisite twenty years. *See* SDCL 15-3-10. Although CNW breached the condition in the deeds in 1970, title in the estate remained vested in CNW and its successors and assigns until the grantors, their heirs, successors, or assigns exercised their power of termination. Thus, there was no hostile possession of the land by the State or NHRRA. As one court remarked, "it is not conceptually logical for the grantee of a fee estate subject to a condition subsequent to acquire an indefeasible estate simply by remaining in possession of the property following breach of the condition. His continued possession and enjoyment of the property does not become adverse to any possessory estate of the grantor until the latter, or his heirs, elect to declare a forfeiture." Metropolitan Park Dist. v. Rigney's Unknown Heirs, 399 P2d 516, 518 (Wash 1965); *see also* New York v. Coney Island Fire Dept., 259 AD 286, 289 (NYCtApp 1940).

26.    Several cases discuss principles of wavier, estoppel, and laches in considering the timeliness of a claim on a breach of a condition subsequent. *Compare Opening and Extending of N. Conduit Ave.*, 27 NYS2d at 843 ("Their delay, acquiescence and silence, no matter how long continued, could not create an estoppel."), *with* Humphrey v. C. G. Jung Ed. Ctr., 624 F2d 637, 643 (5thCir 1980) (under Texas law right for re-entry must be brought within a reasonable time), *and* Sligh v. Plair, 569 SW2d 58, 60 (Ark 1978) (waiver because grantor was aware of breach and acquiesced), *and* Barnesville v. Stafford, 131 SE 487, 489 (Ga 1926)("A waiver or estoppel arises when the grantor does some act inconsistent with his right of forfeiture, and where it would be unjust for him thereafter to insist upon a forfeiture."). NHRRA,

(continued . . .)

Therefore, the court did not err when it quieted title against NHRRA to the property in the Morgan, Norine, and Pettit Deeds.

### B. Deeds with Limiting Language

[¶36.]    Like the deeds without limiting language, the 1890 deeds from Burger, Grenfell, and Newman give, grant, bargain, sell, convey and confirm to FEMV certain property.  Also similar is the language in the habendum clauses providing that "if said railroad shall not be located and graded within two years from the date hereof or if at any time after said railroad shall have been constructed, [FEMV], its successors or assigns shall abandon said road, or the route thereof shall be changed so as to not continue of said premises, the land hereby conveyed, and all rights in and to the same shall revert to the said parties of the first part their successors and assigns."  The significant difference, however, is the presence of limiting language in both the granting and habendum clauses of these three deeds:  "for the purpose of constructing a railroad thereon and for all uses and purposes connected with the construction and use of said railroad. . . ." (granting clause) and "for any and all uses and purposes connected with the construction, preservation, occupation and enjoyment of said railroad" (habendum clause).

[¶37.]    Although the use of "provided that" is indicative of a conditional estate, the language of these deeds in whole persuades us that the parties intended to convey fee simple determinable estates.  Unlike the Morgan, Pettit, and Norine

_____

(. . . continued)
        however, has not raised any equitable defenses such as waiver, laches, or
        estoppel.

Deeds, these deeds do more than impose conditions subject to penalty of forfeiture for a breach. These deeds expressly limit and restrict the conveyance for the purpose of railroad use. Thus, while the deeds do not employ traditional determinable fee language ("so long as," "during," and "while"), the presence of limiting language and the clause demanding automatic reversion reflects an intent to create fee simple determinable estates.[27] *See* Barnes v. Winford, 833 P2d 756, 757 (ColoCtApp 1991); *Georgia, Ashburn, Sylvester & Camilla Ry. Co.*, 174 SE2d at 897; *Reichard*, 1 NW2d at 728-29; *Oregon Dept. of Transp.*, 586 P2d at 795-96.

[¶38.]     A fee simple determinable estate automatically expires upon the occurrence of the stated event, requiring no legal action to vest title in the grantors, their heirs, successors, and assigns. *See* Herr v. Herr, 957 A2d 1280, 1285-87 (PaSuperCt 2008). In this case, the question whether a triggering event has caused the estates to expire implicates the same review conducted on whether the condition subsequent was breached in the Morgan, Norine, and Pettit Deeds. Just as we held that the condition was breached in those deeds, we conclude that the triggering event in the Burger, Grenfell, and Newman Deeds occurred in 1970, when CNW removed all its tracks and facilities and did not again use the road for railroad purposes. The occurrence of the stated event in 1970 caused the automatic

---

27.     The presence of similar limiting language has caused courts to construe a conveyance to be merely an easement interest. *See* Diaz v. Home Fed. Sav. and Loan Ass'n, 786 NE2d 1033, 1041-42 (IllCtApp 2002); Hawk v. Rice, 325 NW2d 97, 98-100 (Iowa 1982); Jordan v. Stallings, 911 SW2d 653, 658 (MoCtApp 1995); Dowd v. City of Omaha, 520 NW2d 549, 554 (NebCtApp 1994); *see also* King County v. Squire Inv. Co., 801 P2d 1022, 1025 (WashCtApp 1990). Here, however, the grants are conceded to be fee simple estates.

expiration of the estate, and all title and interest in the property vested in the grantors, their heirs, successors, and assigns.[28]  The court did not err when it quieted title against NHRRA to this property.

### 3.  The 1890 Deeds without Reversionary Language

[¶39.]        In 1890, Rudolph Kroll and Allie Clark executed separate quit claim deeds to FEMV.  Both deeds use a standard form.  The deeds

> grant, remise, release and quitclaim . . . all . . . estate, right, title, interest, claim, property and demand of, in and to the following real property . . .  The *Right of Way* one hundred (100) feet wide for the [FEMV] being fifty (50) feet in width on each side of the center line of the said Railroad *through over and across* the North half of the North East quarter (N 1/2 NE 1/4) of Section six (6) in Township five (5) North of Range four (4) East of the B.H.M *as said line of Railroad is located over said tract of land.*

(Emphasis added.)  The circuit court held that the deeds conveyed an easement to the railroad based on the use of the words "Right of Way" and the lack of specificity in the property description.  NHRRA, however, contends that, among other things, an easement was not intended because the absence of reversionary language indicates a conveyance in fee.

---

28.    NHRRA claims that if the triggering event occurred, title vested in CNW, its successors, and assigns under the Marketable Title Act, SDCL 43-30-3, and based on adverse possession, SDCL 15-3-10.  The Marketable Title Act contains no language indicating that reversionary interests are extinguished.  Rather, all title and interest in the land vested with the grantors, their successors, and assigns automatically in 1970.  There was no requirement that plaintiffs institute suit to quiet title to regain possession.  In regard to NHRRA's adverse possession claim, there has been no use or occupancy of the land since at least 1984, and therefore, we need not address the merits of this assertion.

[¶40.]     This Court has previously construed private deeds to railroad companies. *Tripp*, 2008 SD 78, ¶9, 755 NW2d at 109; *Meyerink*, 391 NW2d at 182; Nystrom v. State, 78 SD 498, 499-500, 104 NW2d 711, 712 (1960); Sherman v. Sherman, 23 SD 486, 122 NW 439, 442-43 (1909). In each case, we held that fee title was intended.[29] These deeds, however, are unlike the deeds construed by this Court in *Tripp, Sherman, Nystrom*, and *Meyerink*. The Kroll and Clark Deeds contain no language warranting, defending, waiving, or releasing all claims against all persons.[30] Moreover, the deeds grant to the railroad a "Right of Way" *through,*

---

29.    In *Sherman*, this Court examined an 1887 deed that limited the conveyance "for the use of its railroad, but for no other purpose." 23 SD 486, 122 NW at 442-43. The deed, however, did not contain reversionary language. Moreover, consideration for the conveyance was $6,850 and the deed "discharge[d] and forever release[d] [the Railroad] from all *claims* whatsoever." *Id.* (emphasis added). Therefore, the Court concluded that fee title was intended. Then, in *Nystrom*, the Court similarly construed a 1906 deed to convey fee simple title to a railroad. 78 SD at 500, 104 NW2d at 712. This deed did not limit the use of the property for railroad purposes, and there was no reverter clause. In 1986, the Court again construed a 1900s railroad deed to have conveyed fee simple title. *Meyerink*, 391 NW2d at 182. Despite the fact that the deed was captioned "right-of-way deed," there was no language limiting the conveyance to railroad purposes. *Id.* Most recently, in 2008, this Court ruled that while a deed was entitled a right of way deed and contained limiting language, the remaining language of the deed indicated that fee title was intended. *Tripp*, 2008 SD 78, ¶14, 755 NW2d at 111. The deed conveyed the property to the railroad, its successors, and assigns, to have and hold forever. It also warranted title to the property against all persons whomsoever. Finally, the deed did not contain any reversionary language.

30.    *Sherman*, 23 SD 486, 122 NW at 444 (deed discharged and forever released the grantors from all claims whatsoever); *Nystrom*, 78 SD at 499-500, 104 NW2d at 712 ("expressly waives and releases . . . all damages to the lands of said party of the first part"); *Meyerink*, 391 NW2d at 182 (grantors warranted and forever defended title to the property); *Tripp*, 2008 SD 78, ¶14, 755 NW2d at 111 (warranted title to the property "against all persons whomsoever").

*over and across* a tract of land where "said line of Railroad is located." The right of way language and lack of certainty in the strips of land conveyed strongly suggests only a surface right. *See* Polk v. Ball, 149 F2d 263, 266 (5thCir 1945); *Hash II*, 403 F3d at 1320-21; New Orleans & Ne. R.R. v Morrison, 35 So2d 68, 70 (Miss 1948); Morsbach v. Thurston County, 278 P 686, 687 (Wash 1929).

[¶41.]     Because these deeds conveyed to the railroad an easement, we next consider whether the railroad abandoned its easement interest.[31] The question of abandonment for the easements conveyed by these deeds involves the same review we conducted in Issue 1. In view of our holding on Issue 1, the easements granted by these 1890 Deeds without reversionary language were abandoned. CNW exhibited its intent to abandon the Right of Way in 1970, and thereafter, relinquished its interests in the Right of Way by removing the tracks and facilities and not using the Right of Way after 1970 for railroad purposes. Upon abandonment, the easement extinguished. Therefore, the court did not err when it quieted title in certain plaintiffs to the property described by these deeds.[32]

---

31.     NHRRA claims that if the Right of Way is deemed abandoned, the land has been adversely possessed by the State and NHRRA for over 20 years. We need not decide whether a railroad easement can be adversely possessed by the railroad. It is undisputed that the Right of Way has not been used for railroad purposes, or for any purpose, since at least 1984.

32.     We recognize that CNW quitclaimed its interest in the Rights of Way to the State in 1972. This, however, does not revive the easement. CNW merely conveyed to the State what interest it had, if any. CNW had no interest, and therefore, the State obtained nothing.

**4. The Deeds Specifically Excluding the Right of Way Land**

[¶42.]    Certain plaintiffs' current deeds specifically excluded the Right of Way from the property conveyed to those plaintiffs. According to NHRRA, the circuit court erred when it quieted title in favor of these plaintiffs because they do not hold any right or interest in the Right of Way and have no right of reversion under the 1890 deeds.[33] Plaintiffs respond that because the original grantors, their heirs, successors, and assigns failed to answer plaintiffs' complaint seeking to quiet title in the property, fee title was properly quieted in favor of plaintiffs, when the court ruled the Right of Way abandoned.

[¶43.]    "An action to quiet title may be maintained by any person having an estate or interest in land, either legal or equitable." Morse v. Pickler, 28 SD 612, 134 NW 809, 810 (1912) (citation omitted). A failure to show ownership, however, is fatal to a claim. *Id.* "Only through the strength of [a party's] own title could [that party] recover the judgment [ ] sought." Fuller v. Middaugh, 76 SD 288, 293, 77 NW2d 841, 844 (1956) (citing *Morse*, 28 SD 612, 134 NW at 810; Waldner v. Blachnik, 65 SD 449, 274 NW 837 (1937)); *see also* SDCL 21-41-11.

[¶44.]    The deed to Plaintiff Crook Mountain Angus Ranch, Inc. specifically excludes the Right of Way. However, the Right of Way land excluded from this deed was originally obtained by FEMV through the 1875 Act. Because the 1875 Act gave

---

33.    The plaintiffs include Crook Mountain Angus Ranch, Inc., William W. Miller in a Revocable Trust at 50% and Laurel D. Miller as co-trustees of Laurel D. Miller Revocable Trust at 50% as Tenants in Common, and Fred Ening, Jr. The court quieted "title to the railroad right-of-way which adjoins" the property described in these plaintiffs' deeds to the "named Plaintiffs as to the Defendants."

FEMV an easement, and the easement extinguished when the railroad abandoned its right of way, the court did not err when it quieted title against NHRRA to this property. However, which plaintiffs, if any, hold fee title to the Right of Way land excluded from Crook Mountain's deed is not clear from the record. Indeed, the circuit court recognized that "[t]here may be issues between plaintiffs as to ownership which may be determined at a further hearing if plaintiffs are unable to resolve ownership issues among themselves." Plaintiffs have not claimed a dispute of ownership; therefore, there is nothing for us to review with respect to this property.

[¶45.] The deed to Plaintiff William W. Miller and Laurel D. Miller, co-trustees, conveys certain property "lying North of the Railroad right of way." The Right of Way land excluded in the conveyance to the Millers was originally acquired by FEMV from two deeds, one from Pettit and the other from Newman. The deed to Plaintiff Fred Ening, Jr. conveyed certain land, "lying North of the Railroad Right of Way." The Right of Way land excluded in this deed was originally acquired by FEMV from the deed from Norine.

[¶46.] We previously determined that FEMV held title to the land conveyed by the Pettit and Norine Deeds in fee subject to a condition subsequent. Although we found that the condition in the Norine and Pettit Deeds was breached, FEMV and its successors and assigns retained fee ownership of the property until the successors or assigns of the original grantors exercised their power of termination. Because the Millers and Ening have not established title to the Right of Way land originally conveyed to FEMV by the Norine and Pettit Deeds, they are not the

successors or assigns of Pettit or Norine and have no power of termination to exercise. Moreover, the Millers have not established title to the land originally conveyed to FEMV by the Newman Deed, which automatically vested in the grantors, their heirs, and assigns when CNW abandoned the road in 1970. Based on our review of the record, we cannot say who is the successor or assign of Newman, Norine, and Pettit sufficient to establish title in the Right of Way land excluded from the Millers and Ening Deeds. The issue is remanded for proper determination consistent with this opinion.

### 5. Conclusion

[¶47.] We affirm the circuit court's default judgment and summary judgment on stipulated facts quieting title in favor of certain plaintiffs to the land originally acquired by FEMV through the 1875 General Railroad Right-of-Way Act. We further affirm the court in quieting title in favor of certain plaintiffs to land conveyed in 1890 by private deeds to FEMV, except the land specifically addressed in Issue IV and identified as conveyed to Millers and Ening in the court's judgment at number six. With respect to that land, we reverse and remand for further proceedings.

[¶48.] Affirmed in part, reversed in part, and remanded.

[¶49.] GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, and SABERS, Retired Justice, concur.